UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

NATALIE DEJESUS,

Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant.

Case No.: _____



**COMPLAINT AND JURY DEMAND**



**TABLE OF CONTENTS**

I. NATURE OF THE ACTION

II. PRELIMINARY STATEMENT

III. JURISDICTION AND VENUE

IV. PARTIES

V. FACTUAL BACKGROUND

VI. DAMAGES AND INJURIES

VII. STATE OF MIND (willfulness/negligence)

VIII. COUNTS:



**COUNT I — Failure to Conduct a Reasonable Reinvestigation**

*15 U.S.C. § 1681i(a)(1)(A); 15 U.S.C. §§ 1681n, 1681o*

**COUNT II — Failure to Provide Reinvestigation Results Notices**

*15 U.S.C. §1681i(a)(6); 15 U.S.C. §§1681n, 1681o*

**COUNT III — Failure to Provide Method of Verification**

*15 U.S.C. § 1681i(a)(7); 15 U.S.C. §§ 1681n, 1681o*

**COUNT IV — Failure to Provide Full File Disclosure**

*15 U.S.C. § 1681g(a)(1)–(3); 15 U.S.C. §§ 1681n, 1681o*

**COUNT V — Failure to Provide Summary of Rights in Connection with Fraud Alert Placement**

*15 U.S.C. § 1681g(c); 15 U.S.C. §§ 1681n, 1681o*

**COUNT VI — Failure to Maintain Reasonable Procedures to Assure Maximum Possible Accuracy**

*15 U.S.C. § 1681e(b); 15 U.S.C. §§ 1681n, 1681o*

**COUNT VII — Unauthorized Dispute-Coded Investigations**

*15 U.S.C. § 1681i(a)(1)(A); 15 U.S.C. §§ 1681n, 1681o*

**COUNT VIII — Misuse of Identity-Theft Processing**

*15 U.S.C. §1681c-2; §§1681n, 1681o*

**COUNT IX — Unauthorized Fraud Alert Placement and Dissemination**

*15 U.S.C. §1681c-1(a); §§1681n, 1681o*

**COUNT X — Failure to Disclose Fraud-Alert Origin, Basis, and Accurate File Contents**

*15 U.S.C. §1681g(a)(1); §§1681n, 1681o*

**COUNT XI — Unlawful Reinsertion Without Required Certification**

*15 U.S.C. §1681i(a)(5)(B); §§1681n, 1681o*

**COUNT XII — Failure to Provide Mandatory Reinsertion Notice**

*15 U.S.C. §1681i(a)(5)(C); §§1681n, 1681o*

**COUNT XIII — Failure to Maintain Reasonable Procedures to Assure Permissible Purpose and Lawful Furnishing**

*15 U.S.C. §§ 1681b(a), 1681e(a)*

**COUNT XIV— Deceptive Acts and Practices** N.Y.

*General Business Law §349*

IX. PRAYER FOR RELIEF


I.     **NATURE OF THE ACTION**

1.  This action seeks statutory, actual, and punitive damages (where authorized) arising from Defendant Experian Information Solutions, Inc.'s willful and negligent violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

2.  Plaintiff used Experian's dispute process on only two authorized occasions: (a) a June 2025 dispute concerning a tradeline reported by SoFi Bank, N.A., and (b) a December 18, 2025 dispute concerning an LVNV Funding LLC collection tradeline. Outside of those limited submissions, Experian initiated and processed dispute-coded activity without Plaintiff's authorization and attributed it to Plaintiff.

3.  Experian further failed to provide required statutory disclosures (including the method of verification), issued "results ready" representations without producing consumer-facing results, modified and expanded dispute activity beyond Plaintiff's authorization, and placed and maintained fraud/security alert content without Plaintiff's request, including a first-person statement presented as though authored by Plaintiff.

4.  Experian's conduct caused concrete injuries including informational harm from withheld disclosures, loss of control over Plaintiff's consumer file, reputational and credit harm from unstable reporting, and time and emotional distress incurred in attempting to correct Experian's actions.

## II. PRELIMINARY STATEMENT

1.  This action arises from Experian's handling of Plaintiff's consumer file over an extended period despite Plaintiff's limited authorized dispute activity and repeated lawful written requests for statutory transparency and disclosure.

2.  After Experian represented that Plaintiff's June 2025 SoFi dispute was completed, Plaintiff timely requested the method of verification by certified mail. Experian did not provide the required disclosure, and instead generated dispute-coded processing and outcome labels without identifying verification sources, investigative steps, or substantive results Plaintiff could review.

3.  The unreliability of those verification-style representations was compounded because the underlying account was sold on or about July 31, 2025, and SoFi no longer owned it thereafter, yet Experian continued generating dispute-coded outcomes in August and September 2025 without transparency.

4.  Beginning on or about September 17, 2025, Experian placed and maintained fraud/security alert content without Plaintiff's request and published a first-person statement as though authored by Plaintiff. On or about January 23, 2026, Experian sent a communication asserting it was responding to a consumer request to block information due to identity theft, despite Plaintiff making no such request.

5. Key records necessary to determine how and why Experian acted—dispute origination and routing histories, verification logs, fraud-alert origination/authorship records, reinsertion records, and dissemination logs—are in Experian's exclusive possession and will be sought in discovery.

## III. JURISDICTION AND VENUE

### A. Jurisdiction

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

2. This Court has supplemental jurisdiction over Plaintiff's claim under New York General Business Law § 349 pursuant to 28 U.S.C. § 1367(a) because it arises from the same nucleus of operative facts concerning Experian's consumer-facing representations, disclosures, and handling of Plaintiff's consumer file.

### B. Article III Standing

3. Plaintiff has Article III standing because Experian's acts and omissions caused concrete and particularized injuries that are fairly traceable to Experian and redressable by the relief sought.

4. **Informational injury.** Experian failed to provide information Plaintiff was entitled to receive under the FCRA, including reinvestigation results, method-of-verification information, file/source disclosures, fraud-alert origin information, and reinsertion-related disclosures. The withholding concretely impaired Plaintiff's ability to understand, challenge, and correct the contents of her consumer file and to meaningfully exercise her statutory rights.

5. **File integrity and attribution injury.** Experian initiated, modified, and processed dispute-coded activity without Plaintiff's authorization, attributed dispute activity to Plaintiff that Plaintiff did not initiate, and generated consumer-facing representations that Plaintiff alleges were misleading, rendering Plaintiff's file materially unreliable and depriving Plaintiff of control over what was being disputed or processed in Plaintiff's name.

6. **Fraud-alert and file-control injury.** Experian placed and maintained a fraud/security alert without Plaintiff's request or consent, published it as a first-person consumer statement, and failed to disclose its origin, authorization, or basis, causing loss of control over Plaintiff's consumer file and personal identifying information and creating stigma and confusion regarding the status of Plaintiff's file.

7. **Publication-based harm.** Experian continues to publish a disputed LVNV collection tradeline with a reported balance exceeding $66,000 without providing reinvestigation results and, as applicable, reinsertion-related disclosures Plaintiff alleges were required, causing ongoing reputational and credit harm and a material risk of adverse credit decisions because consumer reports reflecting a large unresolved collection account and fraud-tainted file conditions are routinely used by lenders and creditors in evaluating creditworthiness. This ongoing publication creates a continuing and imminent risk that Plaintiff will be denied credit, offered credit only on materially worse terms, or subjected to heightened verification and adverse decisioning based on inaccurate, unstable, or fraud-tainted file conditions that Plaintiff cannot meaningfully assess or correct because Experian withholds required statutory disclosures.

8. **Actual damages.** Plaintiff incurred out-of-pocket costs, loss of time, and emotional distress from repeated efforts to obtain statutory compliance, monitor and mitigate unauthorized file activity, respond to misleading communications, and pursue regulator intervention.

9. These injuries are concrete and real-world, not merely procedural.

10. The relief Plaintiff seeks—including statutory and actual damages and such other relief as the Court deems just and proper—would redress Plaintiff's injuries.

## C. Venue

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District and a substantial part of the events and omissions giving rise to the claims occurred in this District, including Experian's handling of Plaintiff's consumer file and dissemination of consumer reports affecting Plaintiff in this District.

## IV. PARTIES

1. Plaintiff is a natural person and a "consumer" within the meaning of 15 U.S.C. § 1681a(c) and may be reached at: P.O. BOX 180004, Richmond Hill, NY 11418.

2. Defendant Experian Information Solutions, Inc. ("Experian") is a "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f), with its principal place of business at 475 Anton Blvd., Costa Mesa, California 92626. At all relevant times, Experian regularly transacted business in New York, assembled and maintained consumer credit files concerning New York residents (including Plaintiff), and furnished consumer reports to third parties concerning Plaintiff in New York.

## V. FACTUAL BACKGROUND

## A. The Parties

1. Plaintiff is a natural person and a "consumer" as defined by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a(c).

2. Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency ("CRA") within the meaning of 15 U.S.C. § 1681a(f), regularly engaged in the preparation and dissemination of consumer reports for monetary fees.

**B. June–July 2025 — Authorized SoFi dispute; Experian reports "completed/results ready"**

1. At all relevant times, Plaintiff's Experian consumer file included a tradeline reported by SoFi Bank, N.A. ("SoFi") relating to a consumer credit account.

2. On or about June 19, 2025, Plaintiff submitted an authorized dispute to Experian regarding the accuracy and reporting of the SoFi tradeline.

3. Experian represented that the investigation was completed and that results were available for review on or about July 10, 2025.

**C. July 2025 — Certified Method-of-Verification request ("MOV"); Experian provides no MOV**

1. On July 14, 2025, within days of Experian's completion/verification representation, Plaintiff timely requested the method of verification ("MOV") for the SoFi tradeline pursuant to 15 U.S.C. § 1681i(a)(7).

2. Plaintiff sent the MOV request by certified mail, identifying USPS Tracking No. 9589071052701675988546.

3. Plaintiff requested that Experian provide the statutorily required description of the procedure used to determine the accuracy and completeness of the information, and

the name, address, and telephone number of the party contacted in connection with

the verification.

4. Experian did not provide Plaintiff any MOV description within the statutory period or

thereafter, despite representing that verification had occurred.

**D. Clarification — Post-MOV "dispute-coded" activity (unauthorized); Plaintiff escalates**

**(non-dispute purpose)**

1. Plaintiff's July 14, 2025 correspondence was a statutory MOV request—not a request to

open a new dispute or reinvestigation.

2. Plaintiff alleges that instead of complying with § 1681i(a)(7), Experian misclassified

Plaintiff's MOV request as a "new dispute," initiated dispute-coded processing on July

22, 2025, and sent generic dispute-process communications Plaintiff did not request.

3. On July 22, 2025, Plaintiff escalated the matter through regulatory channels to obtain

Method-of-Verification transparency and statutory compliance, not to initiate a new

dispute or reinvestigation.

4. Plaintiff alleges that treating the MOV request as a new dispute had the effect of

reopening dispute-coded workflows without providing the statutorily required

verification disclosure.

5. To date, Plaintiff has not received any Method of Verification in response to her request.

**E. July 31 / August 20 / August 28, 2025 — Ownership/transfer framework Plaintiff**

**disclosed; Experian continues "verification-style" outcomes anyway**

1. Plaintiff alleges the account underlying the SoFi tradeline was sold on or about July 31,

2025, and that thereafter SoFi was no longer the owner of the account.

2. Plaintiff further alleges that SoFi later confirmed the sale to Plaintiff in writing on or about August 20, 2025, and Plaintiff provided notice of this transfer within Plaintiff's escalations and submissions.

3. Plaintiff further alleges that the account was acquired by LVNV on or about August 28, 2025, and that Resurgent Capital Services L.P. ("Resurgent") acted as servicer of the account, as reflected in debt-buyer/servicer materials and related correspondence.

**F. August–September 2025 — Unauthorized dispute-coded**
**"verified/updated/remains/results ready" outcomes after sale/transfer**

1. Plaintiff alleges that after the July 14, 2025 MOV request, Experian continued generating dispute-coded activity and consumer-facing "outcomes" for the SoFi tradeline without Plaintiff's authorization, rather than providing the MOV disclosure required by 15 U.S.C. § 1681i(a)(7). As used in this Complaint, 'verification-style outcomes' refers to Experian's consumer-facing dispute labels such as 'verified,' 'verified and updated,' or similar language indicating purported verification without disclosing investigative substance.

2. On or about August 10, 2025, Experian generated an outcome reflecting the SoFi tradeline was "verified and updated" (or similar "verified" language). Plaintiff alleges this activity was not authorized by Plaintiff and was dispute-coded processing launched in lieu of MOV compliance.

3. On August 14, 2025, Plaintiff escalated the matter to the CFPB and expressly instructed Experian to cease unauthorized disputes and file modifications; nevertheless, additional dispute-coded activity occurred thereafter.

4. Plaintiff alleges that as of August 10, 2025—after the July 31, 2025 sale —Experian's post-sale "verification" outcomes lacked transparency as to what was verified, by whom, and

through what procedures, and Experian still did not provide any MOV disclosure or furnisher contact information.

5. On August 22, 2025, Experian issued a consumer disclosure stating that the disputed item was "Verified and Updated." Experian defined this outcome to mean that "the information you disputed has been verified as accurate; however, information unrelated to your dispute has been updated." Plaintiff did not authorize any dispute or reinvestigation on or about August 22, 2025, and had authorized only a single dispute in June 2025 regarding the SoFi tradeline.

6. Despite representing that verification and updating occurred, the August 22, 2025 disclosure did not identify what information was verified, what information was updated, what furnisher was contacted, what investigative steps were taken, or what changes—if any—were made to Plaintiff's consumer file. The disclosure contained no substantive findings for Plaintiff to review.

7. Plaintiff alleges that this "Verified and Updated" result reflects dispute-coded activity initiated and processed without Plaintiff's authorization and attributed to Plaintiff as if she had requested it. By issuing a verification-style outcome without content and without authorization, Experian deprived Plaintiff of the ability to determine what actions Experian took.

8. On or about September 1, 2025, Experian generated another outcome stating the SoFi tradeline "remains" (or similar language). Plaintiff alleges this activity was also not authorized by Plaintiff and again occurred after SoFi had sold the account.

9. On or about September 17, 2025, Experian represented dispute results were available/"results ready," yet Plaintiff did not receive results and was not informed what was disputed, what

investigative steps were taken, what source was contacted, or what conclusion Experian reached.

### G. September 2025 — Deletion; missing basis and missing "results" despite "results ready"

1. On or about September 10, 2025, Plaintiff received dispute results indicating the SoFi tradeline had been deleted.

2. Plaintiff was not informed of the basis for the deletion, the verifying source, the procedure used, or the investigation details that led to the deletion.

3. Plaintiff alleges that Experian's separate "results ready" representations (including on or about September 17, 2025) were not accompanied by deliverable results identifying what was disputed, what steps were taken, or what conclusion was reached, yet Plaintiff did not receive any consumer-facing results identifying a disposition, investigative steps, or verification basis.

### H. Identity verification provided repeatedly (mail + CFPB uploads), yet Experian avoids statutory transparency

1. Plaintiff provided Experian identity documentation and personal identifiers multiple times and through multiple channels, including:

   - Certified mail (MOV correspondence): Plaintiff mailed identity documentation in connection with the written MOV request and included personal identifiers in correspondence, including Plaintiff's date of birth, last four digits of Plaintiff's Social Security number, and mailing address.

   - Tax documentation: Plaintiff sent tax documentation including a Form 1099, reflecting Plaintiff's address.

- Government-issued ID: Plaintiff provided a New York State driver's license, reflecting Plaintiff's address.

- CFPB uploads: Plaintiff uploaded government-issued identification and 1099 through the CFPB portal (including on or about August 10, 2025), and later uploaded additional documentation including bank statements (all pages) and government-issued identification again—each reflecting Plaintiff's address.

- Plaintiff alleges that despite these repeated identity submissions and consistent address documentation, Experian continued to avoid providing statutory transparency (including MOV and file/audit-trail information) and repeatedly reframed Plaintiff's statutory requests as "fraud" or identity-theft themed issues rather than answering the MOV-specific transparency issues Plaintiff raised.

**Pattern of Mischaracterization of Statutory Requests and Unilateral File Alteration**

2. Plaintiff alleges a consistent and observable pattern in Experian's handling of Plaintiff's statutory requests. Each time Plaintiff requested lawful disclosures— including the method of verification under 15 U.S.C. § 1681i(a)(7), reinsertion certification under § 1681i(a)(5), or a full file disclosure under § 1681g(a)—Experian did not provide the requested information. Instead, Experian repeatedly reframed those transparency requests as 'potential fraud' or identity-theft matters, with the effect of denying the requested statutory disclosures, while continuing to unilaterally modify Plaintiff's consumer file and initiate dispute-coded activity, and publish first-person statements and fraud/security alert language as though authored by Plaintiff, despite Plaintiff never requesting, authorizing, or submitting any fraud or identity-theft claim. Plaintiff alleges this repeated sequence—(i) lawful disclosure request, (ii) fraud/identity-theft reframing, and (iii)

continued file alteration and dispute activity—demonstrates a systemic practice of

avoiding statutory transparency while continuing to act in Plaintiff's name.

## I. Fraud-alert signaling / "fraud" framing without authorization; no origin/authorship/audit-trail transparency

1. Plaintiff alleges Experian placed and/or maintained security/fraud signaling in Plaintiff's file without Plaintiff's request or authorization, including publishing a first-person statement purporting to speak in Plaintiff's voice.

2. On or about September 18, 2025, Experian sent Plaintiff written correspondence stating, in relevant part, that an "INITIAL SECURITY ALERT" was placed "per your request." Plaintiff never requested any fraud/security alert and never authorized Experian to add one. Experian's corresponded further represented that the alert was shared or transmitted to other consumer reporting agencies, thereby expanding the consequences of an alert Plaintiff did not request.

3. Plaintiff alleges the fraud-alert statement lacked key consumer contact details, including a telephone number.

4. Plaintiff alleges Experian did not provide transparent origin/authorship/audit-trail disclosure identifying who initiated the fraud signaling, what documentation supported it, or what internal records/logs governed placement and maintenance.

5. Plaintiff alleges that months after Experian placed and maintained an "INITIAL SECURITY ALERT" (fraud alert) in Plaintiff's consumer file without Plaintiff's request or authorization, and they then issued internally inconsistent consumer disclosures about that alert. Specifically, Experian produced consumer disclosure materials that state Experian cannot locate a fraud/security alert, yet the same disclosure materials also

14

contain pages that display an "INITIAL SECURITY ALERT." In addition, Experian's
dispute-related "results ready" communications and the accompanying dispute materials
for the LVNV Funding and Credit One items—materials that simultaneously reflected the
disputes as pending for LVNV—also display the fraud alert. These contradictions appear
within Experian's own disclosures and dispute packets provided to Plaintiff, preventing
Plaintiff from determining whether Experian is actively maintaining the alert, denying it,
or inconsistently presenting it, and depriving Plaintiff of clear notice of how the alert
affects Plaintiff's file and dispute handling.

**J. SoFi post-sale access; fraud-tainted furnishing; Experian's failure to prevent or explain
access (SoFi is example, not the limit)**

1. Plaintiff incorporates Paragraphs 1–30.

2. Plaintiff alleges Experian's inquiry records reflect that "SOFI BANK NA" accessed
   Plaintiff's consumer report on January 6, 2026 (listed under SoFi Bank, N.A. specifically,
   not an affiliate or servicer).

3. Plaintiff did not apply for credit with SoFi after the sale, did not have an open account
   relationship with SoFi at the time of the January 6, 2026 access, and did not authorize
   SoFi to obtain Plaintiff's consumer report.

4. Experian did not disclose to Plaintiff the permissible purpose relied upon for SoFi's
   January 6, 2026 access, did not disclose any certification supporting that access, and did
   not explain what internal procedures (if any) were used to prevent access by a former
   creditor after sale and deletion. Plaintiff's claim is directed at Experian's failure to
   disclose the basis for permitting and certifying access, not at SoFi's conduct.

5. Despite reflecting that the SoFi tradeline had been deleted and that ownership of the account had transferred, Experian permitted access to and furnishing of Plaintiff's consumer report by SoFi. Experian has not identified any permissible purpose or valid certification supporting that access. Under these circumstances—where Experian had notice that SoFi no longer owned or serviced the account—Experian's continued reliance on any purported certification without verification, reassessment, or procedural safeguards failed to satisfy its duty to maintain reasonable procedures under 15 U.S.C. §§ 1681b(a) and 1681e(a).

6. Plaintiff further alleges that Experian furnished Plaintiff's consumer report during a period when Plaintiff's file was "fraud-tainted," including because it contained unauthorized fraud-alert signaling and a first-person fraud-alert statement placed without Plaintiff's authorization and without transparent origin/audit-trail disclosure.

7. SoFi is pleaded as a concrete example. Plaintiff alleges Experian's inquiry records reflect access by multiple other entities as well, and Plaintiff questions whether each access had a permissible purpose.

8. The identities of each requesting entity, the permissible purposes claimed, any certifications relied upon, and Experian's internal controls and decision-making permitting such access are maintained exclusively by Experian and are within Experian's sole possession, custody, and control.

**K. December 2025 — Reinsertion/reappearance as LVNV collection; authorized dispute; modified/unauthorized dispute activity; missing results**

1. Following deletion of the SoFi tradeline, Plaintiff alleges related information reappeared in December 2025 as an LVNV Funding LLC collection tradeline tied to the same underlying obligation and reflecting SoFi as the original creditor.

2. On or about December 18, 2025, Plaintiff submitted a single, authorized dispute regarding the LVNV Funding LLC tradeline, which Experian assigned Report No. 5983-0245-00.

3. Experian's own records subsequently reflect that Plaintiff's original dispute was "modified by an Experian Disputes Specialist," and that Experian opened a new dispute file and assigned a different report number, Report No. 1948-6511-64, without Plaintiff submitting or authorizing a new dispute.

4. Plaintiff did not request, authorize, or consent to the modification of her original dispute or the creation of a new dispute file.

5. Experian did not provide Plaintiff with reinvestigation results for either Report No. 5983-0245-00 or Report No. 1948-6511-64, nor did Experian explain the basis for modifying Plaintiff's dispute or expanding dispute-coded activity beyond Plaintiff's authorization.

6. On or about December 23, 2025, Plaintiff also placed Experian on written notice through a CFPB complaint with attachments that Experian had modified her December 18th authorized dispute, added an unrelated Credit One account, and reassigned dispute report numbers without authorization; Experian nevertheless failed to correct the modification and instead responded by invoking "potential fraud."

7. Plaintiff alleges that this dispute modification and reassignment obscured the status of Plaintiff's authorized dispute, deprived Plaintiff of required reinvestigation results, and

further demonstrates Experian's practice of unilaterally altering dispute scope without consumer authorization.

8. Plaintiff alleges the reappearance triggered the FCRA's reinsertion safeguards, which Experian did not provide.

## L. December 2025 — Certified reinsertion-certification demand (delivered) and dual-channel notice (mail + CFPB upload)

1. Because reinsertion appeared unlawful, Plaintiff mailed Experian a written statutory reinsertion-certification demand seeking reinsertion-related disclosures, including: (i) any furnisher certification of accuracy, (ii) the date the certification was received, (iii) furnisher contact information, (iv) the information certified, (v) an explanation for the absence of reinsertion notice, and (vi) internal reinsertion-related records (including ACDV/CDV/e-OSCAR communications, system notes, dispute logs, and review logs).

2. Plaintiff's certified-mail tracking reflects that this reinsertion-certification demand was delivered on December 30, 2025 at 11:57 a.m. in Allen, Texas 75013, and was "delivered, left with individual," under USPS Tracking No. 9589071052703861552623.

3. Plaintiff also uploaded the same reinsertion-certification demand through the CFPB portal, ensuring Experian received notice of the request through multiple channels.

4. Experian did not provide the requested certification, did not produce the demanded reinsertion records, and did not provide the reinsertion transparency Plaintiff requested.

5. Instead, Experian treated Plaintiff's reinsertion-certification demand as a trigger for additional dispute-coded activity, initiating and processing reinvestigation workflows that Plaintiff did not authorize, rather than providing the disclosures required by 15 U.S.C. § 1681i(a)(5).

6. Plaintiff alleges this was not an isolated occurrence: Experian similarly responded to Plaintiff's earlier Method-of-Verification request by initiating dispute-coded investigations rather than providing the verification information required by 15 U.S.C. § 1681i(a)(7).

## M. January 2026 — Improper identity-theft / "block" framing while statutory requests remain unanswered

1. On or about January 23, 2026, Experian sent Plaintiff an "Important Information" communication asserting it was responding to Plaintiff's request to block information in Plaintiff's credit report due to alleged identity theft.

2. Plaintiff did not request an identity-theft block under 15 U.S.C. § 1681c-2, did not submit an FTC Identity Theft Report or police report, and did not invoke identity-theft protections; Plaintiff's communications instead sought statutory disclosures, including MOV information, reinsertion certification, and full-file transparency.

3. In the January 23, 2026 communication, Experian demanded identity-theft documentation and additional personal identifying information as a condition of acting, despite Plaintiff's prior identity submissions and despite Plaintiff's statutory requests not being identity-theft requests.

## N. Continuing reporting and ongoing harm (including "accuracy" assertions and ongoing file instability)

1. As of February 2026, Plaintiff alleges the LVNV Funding LLC collection tradeline continues to be actively reported with a balance exceeding $66,000, is updated monthly, and remains flagged as disputed.

2. Plaintiff further alleges Experian has represented in the consumer report context that the account information "meets requirement of the Fair Credit Reporting Act," while Plaintiff has not received the disclosures and notices identified above, has not received the reinvestigation results promised as "results ready," and has not received the statutory transparency Plaintiff requested concerning verification, reinsertion safeguards, and file/audit-trail information.

3. Beyond reinsertion, Plaintiff alleges Experian has continued to initiate, reopen, and/or modify dispute-coded investigations without Plaintiff's authorization, including altering dispute scope and adding items Plaintiff did not request to be disputed, while failing to provide results for the dispute Plaintiff actually authorized and failing to provide responses to Plaintiff's statutory requests.

4. Plaintiff alleges this pattern—mischaracterizing Plaintiff's statutory submissions as "potential fraud" or identity-theft requests while simultaneously modifying the file, initiating dispute-coded events, and disseminating consumer reports—has repeated over an extended period and has deprived Plaintiff of control over Plaintiff's own consumer file.

**N.1 Clarification — February 4, 2026 consumer disclosure contradicts itself on fraud alert status and references an item Plaintiff did not dispute (Experian Report No. 2575-8173-76)**

1. Plaintiff alleges that Experian's inconsistent and contradictory disclosures have made Plaintiff's file unstable and materially unreliable from Plaintiff's perspective—because Plaintiff cannot determine what file-level conditions exist, what is being disputed, what

results exist, or what actions Experian is taking in Plaintiff's name except by receiving piecemeal "results" that contradict themselves.

2. For example, Experian's consumer disclosure dated February 4, 2026, Experian Report No. 2575-8173-76, states: "records indicate that your credit report does not display a fraud alert."

3. Yet within the same February 4, 2026 disclosure, Experian simultaneously publishes file-level "security alert" content, including a first-person statement beginning "I have been a victim of fraud …" and an "INITIAL SECURITY ALERT" with an effective period stated as "1 YEAR BEGINNING 09-17-25" and "1 YEAR ENDING 09-17-26."

4. Plaintiff did not request or authorize any fraud alert or security alert. Plaintiff alleges that Experian's February 4, 2026 consumer disclosure (Experian Report No. 2575-8173-76) contains a direct, irreconcilable contradiction: it expressly states that "records indicate that your credit report does not display a fraud alert," while simultaneously publishing a first-person fraud statement ("I have been a victim of fraud …") and an "INITIAL SECURITY ALERT" with a defined effective period of "1 YEAR BEGINNING 09-17-25" and "1 YEAR ENDING 09-17-26."

5. This contradiction is not merely semantic. Plaintiff further alleges that an independently obtained third-party consumer report—pulled outside of Experian and contemporaneous with Experian's February 2026 disclosures—affirmatively displays the same fraud alert as active, with the same September 17, 2025 start date and one-year duration. Thus, Experian's own representations conflict not only internally, but also with how Plaintiff's file is being presented to third parties, rendering Plaintiff unable to determine whether a

fraud alert exists, how her file is coded, or what representations are being furnished in her name.

**O. Unreasonable procedures and internal contradictions tied to § 1681e(b)**

1. Experian's conduct reflects a failure to maintain reasonable procedures to assure maximum possible accuracy and lawful handling of Plaintiff's consumer information, in violation of 15 U.S.C. § 1681e(b). Specifically, Experian repeatedly characterized Plaintiff's submissions as "potential fraud" or identity-theft related in communications and consumer-facing correspondence as a basis to demand further documentation or deny transparency, while simultaneously (i) initiating and processing dispute-coded events, (ii) modifying dispute scopes, (iii) deleting and reinserting tradelines, (iv) maintaining fraud-alert signaling without origin/audit-trail disclosure, and (v) furnishing Plaintiff's consumer report to third parties (including a post-sale access by "SOFI BANK NA" on January 6, 2026), all without providing required MOV information, reinvestigation results, reinsertion certification, or audit-trail transparency.

2. The internally inconsistent procedures are further demonstrated by Experian's February 4, 2026 consumer disclosure (Experian Report No. 2575-8173-76) stating that "records indicate that your credit report does not display a fraud alert," while simultaneously publishing an "INITIAL SECURITY ALERT" containing a first-person fraud statement and an effective period "1 YEAR BEGINNING 09-17-25" through "1 YEAR ENDING 09-17-26." The same disclosure also references an item Plaintiff did not dispute— **"This is a Buy Now Pay Later tradeline."** Plaintiff alleges these contradictions show Experian's procedures are not reasonable procedures capable of assuring accurate,

consistent file-level conditions, accurate dispute attribution, lawful dissemination, or consumer transparency.

**P. Evidence in Plaintiff's possession**

1. Plaintiff maintains comprehensive documentation supporting the above allegations, including but not limited to: certified mail receipts and USPS tracking records; copies of Plaintiff's correspondence to Experian; Experian dispute communications and consumer-facing notifications; CFPB complaints, uploads, and responses; documentation reflecting SoFi's sale timeline and SoFi's written notice; inquiry/access logs reflecting third-party accesses including "SOFI BANK NA" on January 6, 2026; and screenshots/screen recordings of Experian portal information reflecting dispute-coded activity, tradeline deletion, reinsertion/reappearance, and fraud-alert placement/content.

2. These materials are in Plaintiff's possession and will be produced in discovery.

3. Additional records necessary to confirm the full scope and mechanics of Experian's conduct—including internal dispute-routing histories, audit trails, verification logs, MOV handling records, reinsertion certification records, and dissemination/recipient logs—are maintained exclusively by Experian and are within Experian's sole possession, custody, and control.

## VI. DAMAGES AND INJURIES

As a direct and proximate result of Experian Information Solutions, Inc.'s unlawful acts and omissions, Plaintiff suffered concrete, particularized, and ongoing injuries recognized under Article III and the Fair Credit Reporting Act.

**A. Informational Injury and Statutory Deprivation**

1. Plaintiff was deprived of information to which she was statutorily entitled under the FCRA, including but not limited to:

   - The method of verification required by 15 U.S.C. § 1681i(a)(7);

   - Complete and intelligible reinvestigation results;

   - File-level source, routing, and audit-trail information necessary to understand what Experian verified, modified, disputed, or disseminated;

   - Origin, authorship, and authorization records for fraud/security alert signaling placed in Plaintiff's file; and

   - Reinsertion-related certifications and disclosures required by 15 U.S.C. § 1681i(a)(5).

2. Experian's failure to provide this information impaired Plaintiff's ability to understand, challenge, and correct her consumer file and to meaningfully exercise her statutory rights.

3. This informational injury was concrete, particularized and ongoing, as Plaintiff was forced to rely on contradictory, incomplete, and misleading consumer disclosures that did not accurately reflect the status of her file or the actions Experian was taking in her name.

**B. Loss of Control Over Consumer File and Personal Information**

1. Plaintiff suffered a loss of control over her consumer file and personal identifying information when Experian:

   - Initiated and modified dispute-coded activity without Plaintiff's authorization;

   - Attributed dispute activity to Plaintiff that Plaintiff did not initiate;

   - Authored and published first-person fraud/security alert language purporting to speak in Plaintiff's voice;

- Treated Plaintiff's file as fraud-implicated while simultaneously denying the existence of a fraud alert in consumer disclosures; and

- Continued modifying and disseminating Plaintiff's consumer report without transparent disclosure of what conditions existed in the file.

2. As a result, Plaintiff could not reliably determine:

- What items were being disputed;

- What investigations were being conducted;

- Whether a fraud/security alert existed or was being transmitted;

- What information was furnished to third parties; or

- What representations Experian was making about Plaintiff's creditworthiness.

3. Plaintiff further lost control over her consumer report when Experian furnished Plaintiff's report to third parties without maintaining or disclosing the permissible purpose and certification supporting such access, requiring Plaintiff to independently discover and investigate unexplained third-party inquiries reflected in her credit file.

## C. Reputational and Credit Harm

1. Experian's conduct caused reputational and credit harm by publishing and disseminating:

- A disputed LVNV Funding LLC collection tradeline with a reported balance exceeding $66,000;

- Fraud/security alert signaling that could reasonably be interpreted by third parties as indicating identity theft or fraudulent conduct; and

- Inconsistent, unstable, and unreliable file-level conditions that increased the likelihood of adverse credit decisions.

2. This conduct created a material and ongoing risk that Plaintiff would be:

- Denied credit;

- Offered credit only on worse terms;

- Subjected to heightened verification requirements;

- Treated as a fraud risk; or

- Otherwise adversely evaluated by lenders, creditors, or other users of consumer reports.

3. Plaintiff need not allege an actual credit denial to establish harm; the publication and furnishing of inaccurate, contradictory, or fraud-tainted file conditions itself created a real and material risk of adverse credit decisions and reputational harm.

4. These harms flow directly from Experian's continued publication and dissemination of Plaintiff's consumer report containing the conditions described above.

**D. Emotional Distress and Mental Anguish**

1. Plaintiff suffered emotional distress, anxiety, frustration, and mental anguish resulting from:

- The inability to determine what Experian was doing to her file;

- The appearance of first-person fraud statements she did not author;

- Repeated contradictory disclosures stating both that no fraud alert existed and that a fraud/security alert was active;

- The burden of monitoring and responding to unstable and misleading reporting; and

- The uncertainty created by Experian's refusal to provide clear, consistent, and truthful disclosures.

2. Plaintiff's distress was not fleeting or trivial, but persistent and directly tied to Experian's ongoing conduct and failure to comply with statutory duties after notice.

### E. Economic and Mitigation Costs

1. Plaintiff incurred out-of-pocket costs and economic losses, including but not limited to:

- Certified mail expenses;

- Copying and documentation costs;

- Time spent reviewing reports, responding to notices, and pursuing statutory compliance;

- Time and effort expended communicating with regulators, including the CFPB; and

- Time lost attempting to stabilize and understand her consumer file.

2. Plaintiff also expended substantial uncompensated time attempting to mitigate harm caused by Experian's conduct—time that would not have been necessary had Experian complied with its statutory obligations.

### F. Ongoing and Prospective Harm

1. Experian's violations are ongoing. As of the filing of this Complaint:

- Plaintiff continues to face unstable and unreliable reporting;

- Required statutory disclosures remain outstanding; and

- Plaintiff remains unable to determine with certainty what information Experian maintains, disputes, or disseminates.

2. Absent relief from this court, Plaintiff faces a continuing risk of future harm arising from inaccurate, contradictory, or fraud-tainted file conditions that Plaintiff cannot meaningfully assess or correct.

## VII. STATE OF MIND AND REMEDIES

*(15 U.S.C. §§ 1681n, 1681o)*

### A. Willfulness / Reckless Disregard

*(15 U.S.C. § 1681n; Safeco)*

**Incorporation.** Plaintiff incorporates by reference the preceding factual allegations.

### Theory of Liability

1. Experian's violations of the FCRA, as alleged in this Complaint and supported by repeated notice and post-notice conduct, were willful within the meaning of 15 U.S.C. § 1681n.

2. Under Safeco Ins. Co. of Am. v. Burr, willfulness includes reckless disregard—conduct that is objectively unreasonable in light of the statute's requirements and that creates a risk of violating the law substantially greater than mere carelessness.

3. Experian had repeated notice of Plaintiff's statutory requests and the limited scope of Plaintiff's authorized communications; nevertheless, Experian continued the challenged conduct without correction, disclosure, or transparent explanation.

4. **Scope.** This section addresses only the state-of-mind requirement and remedies under § 1681n. Plaintiff does not assert § 1681n as a standalone substantive violation; rather, Plaintiff alleges Experian acted willfully and/or in reckless disregard in connection with the substantive FCRA violations alleged in this Complaint.

### Facts Supporting Willfulness

The facts alleged plausibly support an inference of reckless disregard because they reflect repeated statutory noncompliance after sustained notice, including:

The challenged conduct was not limited to omissions or delay but included affirmative acts such as authoring first-person fraud statements, initiating dispute-coded workflows without authorization, disseminating fraud-alert signaling, and furnishing consumer reports while denying the existence of those conditions.

Despite repeated written notice and supporting documentation, Experian continued the same challenged practices for months without correction or meaningful disclosure.

## (a) Repeated notice + continued nondisclosure (MOV / file transparency / reinsertion safeguards)

1. Plaintiff repeatedly sought statutorily required transparency concerning Experian's handling of her file, including requests for the method-of-verification disclosure under § 1681i(a)(7), complete reinvestigation results, and related file/source information necessary to understand what Experian maintained, changed, routed, and relied upon.

2. Instead of providing the disclosures required by the FCRA, Experian allegedly used dispute-coded workflows and consumer-facing outcome labels in place of responding to Plaintiff's statutory requests, while withholding the verification method, sources contacted, and investigative steps.

3. Repeated nondisclosure after notice supports an inference of reckless disregard rather than isolated error.

## (b) Dispute-coded activity attributed to Plaintiff that Plaintiff did not initiate / lack of authorization controls

1. Plaintiff alleges Experian initiated, routed, modified, and processed dispute-coded activity in Plaintiff's name that Plaintiff did not submit or authorize, including modifying

Plaintiff's authorized dispute and expanding dispute-coded processing to items Plaintiff did not dispute.

2. Plaintiff further alleges that, through a formal CFPB complaint submitted on or about August 14, 2025, and September 1, 2025.  Plaintiff expressly instructed Experian to cease all unauthorized access to, modification of, and dispute-coded activity involving Plaintiff's consumer file, and made clear that Plaintiff was not requesting new disputes, identity-theft processing, or file changes. Despite this written notice, Experian continued to initiate dispute-coded investigations and other file activity in response to Plaintiff's statutory requests rather than providing the information required by law. Experian's continuation of the same conduct after express regulatory notice supports an inference of willful or reckless disregard rather than inadvertent error.

3. This pattern plausibly reflects the absence of reasonable authorization controls and is inconsistent with the consumer-directed reinvestigation framework Congress required.

4. Post-Regulatory Notice Conduct. On August 14, 2025, following multiple unauthorized dispute events, Plaintiff submitted a formal complaint to the Consumer Financial Protection Bureau expressly instructing Experian that Plaintiff was not disputing, was not alleging fraud or identity theft, and was demanding only compliance with the Method-of-Verification requirements of 15 U.S.C. §1681i(a)(7). Plaintiff further instructed Experian to cease unauthorized dispute activity, file modifications, and access outside the scope of any written, authorized request. Despite this regulatory notice, Experian continued to initiate, route, or maintain dispute-coded investigations and file-level processing not authorized by Plaintiff. Continued dispute activity after explicit regulatory notice supports an inference of reckless disregard rather than inadvertent error.

**(c) "Results ready" representations without released results (September 17, 2025; LVNV "Pending" / no results)**

1. In September 2025, Experian issued consumer-facing notifications stating dispute results were "ready," including on or about September 17, 2025, yet Plaintiff received no results, no description of what was disputed, no investigative steps, and no conclusions.

2. After Plaintiff's authorized December 18, 2025 dispute regarding the LVNV collection tradeline, Plaintiff received no reinvestigation results for the authorized dispute, no results for the modified dispute activity, and no results for any unauthorized LVNV-related dispute-coded investigations, while Experian continued reflecting unresolved/pending status.

3. Marking investigations "results ready" (or functionally treating matters as investigated/processed) while withholding the substance of results supports willfulness.

**(d) Fraud alert placement + first-person misattribution + dissemination + refusal to provide origin/audit-trail transparency (and inability to determine file status from Experian "results")**

1. Plaintiff alleges Experian placed and maintained an initial security/fraud alert beginning on or about September 17, 2025 without Plaintiff's request or authorization, and without disclosing the origin, requester, initiation channel, or supporting logs/records.

2. Plaintiff further alleges Experian authored and published a first-person fraud/security-alert statement purporting to speak in Plaintiff's voice ("I" / "my"), falsely attributing authorship and intent to Plaintiff without authorization, and presented the alert without meaningful consumer contact information (including a phone number).

3. Rather than provide origin/source disclosures, Experian allegedly recast Plaintiff's inquiry as a dispute-triggering event and routed the matter through dispute-coded workflows without Plaintiff's consent.

4. During the time Experian treated Plaintiff's file as fraud-implicated and while the first-person fraud/security alert remained displayed in consumer-facing materials, Experian disseminated Plaintiff's consumer report and fraud-alert status to third parties and continued to modify Plaintiff's file while withholding the records needed to identify who placed the alert, why it was placed, and what documentation (if any) supported it.

5. Because Experian's own consumer disclosures and "results" are internally contradictory and nontransparent, Plaintiff cannot reliably determine—based solely on Experian's shifting consumer-facing statements—what file-level fraud conditions exist or do not exist at particular times, what was transmitted to third parties, what dispute-coded activity was launched, or what was changed internally; those answers depend on Experian's audit trails, origination logs, dispute-routing histories, and dissemination records that Experian has withheld.

6. Experian's reckless disregard is further demonstrated by a direct and unreconciled contradiction within its own consumer disclosures, corroborated by third-party reporting. In a consumer disclosure dated February 4, 2026 (Experian Report No. 2575-8173-76), Experian affirmatively states that "records indicate that your credit report does not display a fraud alert." Yet within that same February 4, 2026 disclosure, Experian simultaneously publishes file-level fraud/security alert content written in the first person, including a first-person statement beginning "I have been a victim of fraud …," and an "INITIAL SECURITY ALERT" with a defined effective period stated as "1 YEAR

BEGINNING 09-17-25" and "1 YEAR ENDING 09-17-26." Days earlier, Plaintiff independently obtained a third-party consumer report reflecting that the same first-person fraud/security alert was present and active, which Plaintiff uploaded to the CFPB and provided in connection with Plaintiff's requests for clarification and origin information. Plaintiff did not author, request, or submit any fraud alert, did not provide first-person fraud language, and did not invoke identity-theft protections. Because Experian denied the existence of a fraud alert while simultaneously displaying one—and because a contemporaneous third-party disclosure reflected the same alert as present—these representations cannot be reconciled as consumer misunderstanding or harmless discrepancy.

7. These facts support an inference that the fraud/security alert and first-person language originated within Experian's systems and processes, not Plaintiff's actions. The records identifying who created, authored, coded, maintained, or transmitted that fraud/security alert—including system logs, audit trails, authorship metadata, and dissemination records—are maintained exclusively by Experian and are within Experian's sole possession, custody, and control. Treating Plaintiff's file as fraud-implicated for internal handling and dissemination while denying the alert's existence in a consumer disclosure is objectively unreasonable and evidences reckless disregard for the FCRA's requirements governing accuracy, transparency, and file integrity.

**(e) Failure to provide Summary of Rights in connection with fraud/security-alert processing**

Experian did not provide the Summary of Rights prescribed by 15 U.S.C. § 1681g(c) in connection with fraud/security-alert processing—at placement, while active, or in subsequent

handling—depriving Plaintiff of statutorily required notice during periods of adverse file signaling and dissemination.

**(f) Reinsertion / reappearance and continued reporting after notice and statutory demand**

1. After deletion of the prior tradeline, Plaintiff alleges the same underlying obligation reappeared as the LVNV collection tradeline. Plaintiff further alleges that after Plaintiff demanded reinsertion safeguards (including furnisher certification of accuracy and required notice) under 15 U.S.C. § 1681i(a)(5), Experian continued reporting and updating the LVNV tradeline without producing the required certification or notice.

2. On or about December 23, 2025, Plaintiff sent Experian a written demand by certified mail specifically requesting the reinsertion safeguards required by § 1681i(a)(5) and expressly instructing Experian not to initiate any additional disputes or reinvestigations beyond Plaintiff's sole authorized December 18, 2025 dispute.

3. Experian did not provide the requested certification or notice. Instead, Experian treated Plaintiff's certification request as a trigger for further dispute-coded activity, initiating and processing additional disputes that Plaintiff did not authorize and modifying the scope of Plaintiff's authorized dispute.

4. Plaintiff further alleges that Experian continued launching dispute-coded investigations in response to Plaintiff's written requests for statutory verification—despite Plaintiff's repeated objections and instructions to cease such activity—thereby converting requests for compliance into reinvestigation events without authorization.

5. This pattern of responding to statutory verification requests with unauthorized disputes, rather than providing the information required by law, supports an inference of willful or reckless disregard.

**(g) Additional examples supporting reckless disregard: dispute-scope distortion, outcome labels without disclosed substance, and identity-theft "block" mischaracterization**

1. In the same February 4, 2026 consumer disclosure (Experian Report No. 2575-8173-76), Experian also states: "This is a Buy Now Pay Later tradeline." Plaintiff alleges she did not dispute any "Buy Now Pay Later" tradeline and disputes concerned only the LVNV obligation described in the Complaint. The presence of this reference in this dispute/disclosure context supports the inference that Experian's dispute-coded processing was expanded, routed, or attributed to items Plaintiff did not dispute, reflecting objectively unreasonable controls after notice and further depriving Plaintiff of the ability to track what Experian is disputing or modifying in Plaintiff's name.

2. Plaintiff further alleges Experian issued a consumer "results" disclosure dated August 22, 2025 reflecting the outcome "Verified and Updated," which Experian defined as meaning that "the information you disputed has been verified as accurate; however, information unrelated to your dispute has been updated." Plaintiff alleges this August 22, 2025 disclosure did not identify what information was verified, what information was updated, what furnisher was contacted, what investigative steps were taken, or what changes—if any—were made to Plaintiff's file, thereby providing no substantive findings for Plaintiff to review despite Experian's representation that verification and updating occurred.

3. Plaintiff further alleges this "Verified and Updated" processing was not authorized by Plaintiff beyond Plaintiff's limited and authorized dispute use described in the Complaint (Plaintiff's post-June communications were statutory requests, including MOV), and that the issuance of conclusory outcome labels without meaningful content—after notice—

supports an inference of reckless disregard for the FCRA's transparency, reinvestigation-result, and file-integrity requirements.

4.  Plaintiff further alleges that on or about January 23, 2026, Experian sent an "Important Information" communication asserting it was responding to Plaintiff's request to block information due to identity theft and demanding identity-theft documentation. Plaintiff made no such request and did not submit an FTC Identity Theft Report or police report.

5.  Plaintiff alleges Experian invoked identity-theft/block procedures while Experian had already placed fraud/security-alert signaling on Plaintiff's file without authorization and while Experian had received Plaintiff's actual correspondence seeking reinsertion certification and statutory disclosures (including via certified mail and via CFPB uploads). Plaintiff alleges this pattern—mischaracterizing statutory requests as identity theft and using fraud-related framing to demand more documentation or deny transparency while continuing to modify and disseminate the file—supports an inference of reckless disregard rather than inadvertent error.

6.  Plaintiff further alleges that this was not an isolated occurrence. After Plaintiff submitted a lawful request for the Method of Verification under 15 U.S.C. § 1681i(a)(7), Experian sent Plaintiff an "Important Information" communication dated August 16, 2025 invoking identity-theft–related dispute and blocking procedures despite the absence of any fraud allegation.

7.  Plaintiff did not allege fraud, did not claim identity theft, and did not request identity-theft protections in connection with that request. Plaintiff alleges that Experian's repeated practice of responding to statutory compliance requests by invoking identity-theft workflows—rather than providing the information required by law—demonstrates a

pattern of mischaracterization and disregard for the limited scope of Plaintiff's authorized communications.

8. Experian's conduct cannot be justified as an objectively reasonable interpretation of the FCRA because it involved internally inconsistent representations made simultaneously to the same consumer, continued after repeated notice, and required affirmative system actions rather than passive omission.

**Records Within Experian's Exclusive Control / Discovery**

Many of the most probative facts bearing on Experian's willfulness—including dispute-creation triggers; dispute routing and modification history; internal audit trails; verification logs supporting "verified/updated/remains/results ready" representations; fraud/security-alert origination and authorship records; fraud/security-alert maintenance records; reinsertion certification records; and dissemination/recipient logs—are maintained exclusively by Experian and within Experian's sole control. This supports a plausible inference of reckless disregard at the pleading stage.

**Damages**

As a direct and proximate result of Experian's willful noncompliance, Plaintiff suffered concrete and ongoing harm, including informational injury, reputational and credit harm, emotional distress and mental anguish, economic and mitigation costs, and loss of control over her consumer file.

**Relief Under § 1681n**

Because Experian's violations were willful, Plaintiff seeks the remedies authorized by § 1681n, including statutory damages, actual damages, punitive damages, and costs and attorneys' fees where permitted.

**B. Alternatively, Negligent Noncompliance**

*(15 U.S.C. § 1681o)*

**Incorporation.** Plaintiff incorporates by reference the preceding factual allegations.

**Theory of Liability**

1. In the alternative, Experian's conduct constituted negligent noncompliance with the FCRA within the meaning of 15 U.S.C. § 1681o.

2. At all relevant times, Experian owed Plaintiff a statutory duty to exercise reasonable care in the preparation, maintenance, reinvestigation, modification, fraud/security-alert handling, and dissemination of Plaintiff's consumer file information.

**Limitation / non-duplication**

This section is limited to pleading negligent noncompliance and the remedies authorized by § 1681o as to the statutory violations alleged in this Complaint. Plaintiff does not restate the substantive elements of each underlying violation here; rather, Plaintiff alleges Experian's acts and omissions fell below the standard of reasonable care required of a CRA.

**Negligent Acts and Omissions (examples)**

1. Experian breached its duty of reasonable care by, among other things:

- Failing to provide complete reinvestigation results and required statutory notices after dispute processing and consumer-facing communications;

- Failing to provide a method of verification after a lawful request under § 1681i(a)(7);

- Modifying Plaintiff's authorized dispute and expanding dispute activity to items Plaintiff did not dispute, without authorization and without providing results;

- Publishing internally contradictory disclosures about whether a fraud/security alert exists (including a February 4, 2026 disclosure stating no fraud alert existed while

38

simultaneously displaying a first-person "INITIAL SECURITY ALERT" with a defined one-year term), thereby rendering Plaintiff unable to determine basic file-level conditions;

- Placing, maintaining, disseminating, and handling a fraud/security alert without providing origin/source disclosures, authorship information, or a sufficient audit trail to allow Plaintiff to understand and correct her file;

- Failing to provide the Summary of Rights required by § 1681g(c) in connection with fraud/security-alert processing; and

- Allowing reappearance/reinsertion of previously deleted adverse information without required reinsertion safeguards.

**Damages and Relief Under § 1681o**

1. As a direct and proximate result of Experian's negligent noncompliance, Plaintiff suffered actual damages including out-of-pocket costs, loss of time, emotional distress, and impairment of creditworthiness.

2. Plaintiff seeks all relief authorized by § 1681o, including actual damages, costs, and attorneys' fees where permitted.

## VIII. COUNTS

### COUNT I — Failure to Conduct a Reasonable Reinvestigation

*15 U.S.C. § 1681i(a)(1)(A); 15 U.S.C. §§ 1681n, 1681o*

**Incorporation by Reference.** Plaintiff incorporates by reference only those preceding factual allegations relevant to this Count.

**Theory of Liability**

1. The Fair Credit Reporting Act requires a consumer reporting agency, upon receiving a consumer dispute, to conduct a reasonable reinvestigation to determine whether disputed information is inaccurate and to record the current status of the disputed information or delete it. 15 U.S.C. § 1681i(a)(1)(A).

2. Once a consumer reporting agency undertakes dispute-coded investigation activity and issues consumer-facing verification outcomes—including labels such as "verified," "verified and updated," or "remains"—the agency must have performed a reasonable reinvestigation capable of determining whether the disputed information could be verified as accurate or instead should be deleted or corrected. A reinvestigation that yields outcome labels without meaningful substance, a reliable verification basis, or identifiable investigative steps is not a reasonable reinvestigation under § 1681i(a)(1)(A).

3. Experian breached these duties by undertaking dispute-coded investigation activity and issuing verification-style outcomes concerning Plaintiff's SoFi tradeline and later Plaintiff's LVNV tradeline, while failing to conduct any meaningful reinvestigation capable of determining whether the disputed reporting was inaccurate or could not be verified, and while continuing to publish the information without lawful resolution.

**Limitation / Non-Duplication Clause**

This Count is limited strictly to Experian's failure to conduct a reasonable reinvestigation under 15 U.S.C. § 1681i(a)(1)(A). This Count does not seek liability for failure to provide reinvestigation results notices under § 1681i(a)(6), unauthorized dispute authorship or modification, failure to forward disputes, method-of-verification violations under § 1681i(a)(7), reinsertion violations under § 1681i(a)(5), fraud-alert or disclosure violations, or permissible-purpose violations, all of which are addressed in separate Counts.

**Count-Specific Allegations**

1. Plaintiff submitted an authorized consumer dispute in or about June 2025 regarding the reporting of an account by SoFi Bank, N.A.

2. After Experian represented that the June 2025 dispute was completed, Plaintiff timely requested a method of verification. Plaintiff alleges this request was a statutory transparency demand and was not authorization to open any new dispute or reinvestigation.

3. Despite Plaintiff's limited authorized dispute activity, Experian undertook additional dispute-coded investigation activity concerning the same SoFi account and issued verification-style outcomes to Plaintiff.

4. Experian issued a dispute results report bearing Report No. 1073-5083-36 and reflected an August 2025 outcome labeled "Verified and Updated," which was disclosed to Plaintiff on or about August 22, 2025.

5. At the time Experian issued that "Verified and Updated" outcome, SoFi Bank had already sold the account on or about July 31, 2025 and no longer owned the tradeline. Plaintiff had not authorized any new dispute or reinvestigation after the transfer.

6. Although Experian labeled the outcome "Verified and Updated," the corresponding dispute results disclosure did not identify any tradeline as having been verified, did not specify what information was updated, did not identify any furnisher contacted, and did not reflect any investigative findings capable of demonstrating that a reasonable reinvestigation occurred. Absent identification of a furnisher, verification source, or investigative steps, the reinvestigation could not have been reasonably calculated to determine the accuracy of the information.

7. Accordingly, Experian's post-transfer verification-style activity concerning the SoFi tradeline occurred without any consumer-authorized reinvestigation and was incapable of determining accuracy, rendering the verification outcome materially unreliable and insufficient under § 1681i(a)(1)(A).

8. Experian later generated Report No. 2467-0092-12 (dated September 1, 2025), representing that the same SoFi account "remains," despite the prior transfer and without identifying any verification source, investigative steps, or procedural basis.

9. On or about December 18, 2025, Plaintiff submitted an authorized consumer dispute to Experian regarding the same underlying obligation as reported by LVNV Funding LLC.

10. Plaintiff alleges Experian modified and/or re-coded Plaintiff's authorized LVNV dispute and initiated additional dispute-coded investigation activity beyond the scope of Plaintiff's authorization. Records reflecting the nature, routing, scope, and substance of those activities are maintained exclusively by Experian.

11. Despite undertaking dispute-coded investigation activity, Experian continued to list the LVNV account as "Pending" on dispute results pages associated with Experian-generated report numbers, including Report No. 1948-6511-64 and Report No. 2911-3883-44, while continuing to represent that investigations were completed or results were available.

12. While Plaintiff's authorized December 18, 2025 dispute regarding the LVNV Funding LLC collection tradeline remained unresolved and reflected as 'Pending,' Experian undertook dispute-coded activity affecting other tradelines that Plaintiff did not dispute, including modifying and updating a Credit One account that had been paid and closed for years. Plaintiff did not authorize any dispute, reinvestigation, or modification of the Credit One account. Experian's initiation and completion of dispute-coded activity on

undisputed accounts, while failing to timely resolve or provide results for the authorized LVNV dispute, further demonstrates that Experian's reinvestigation was not reasonably calculated to address the dispute Plaintiff actually submitted.

13. Experian represented that dispute investigations were completed and that results were ready for review, yet continued to report the LVNV tradeline without stating any disposition, without reflecting any completed investigative determination, and without identifying any verification source or investigative basis—thereby failing to conduct a reasonable reinvestigation capable of determining whether the disputed information was inaccurate or could not be verified.

14. Records concerning the existence, scope, and substance of any reinvestigation conducted—including what Experian claimed to verify, what steps were taken, what sources were contacted, and what procedures were used—are maintained exclusively by Experian and are within Experian's sole possession, custody, and control.

## COUNT II — Failure to Provide Reinvestigation Results Notices

*15 U.S.C. §1681i(a)(6); 15 U.S.C. §§1681n, 1681o*

**Incorporation by Reference.** Plaintiff incorporates by reference only those preceding factual allegations relevant to this Count.

### Theory of Liability

1. 15 U.S.C. §1681i(a)(6) requires a consumer reporting agency, upon completion of a reinvestigation, to provide the consumer written notice of the results of the reinvestigation. The results notice must include, among other things, the outcome/disposition of the reinvestigation and required accompanying information and consumer-rights disclosures.

2. Where a CRA represents to the consumer that a reinvestigation has been completed and that "results" are available or "ready," and generates dispute report numbers tied to dispute-coded investigation activity, the CRA has triggered its §1681i(a)(6) obligation to provide a results notice that meaningfully communicates the disposition and required statutory information.

3. Experian breached these duties by issuing "completed/results ready" representations and generating dispute report numbers, yet failing to provide Plaintiff with any meaningful written notice of results—while continuing to show the LVNV dispute as unresolved and "Pending," and while failing to disclose any disposition, investigative conclusion, or required rights information.

**Limitation / Non-Duplication Clause**

This Count is limited strictly to Experian's failure to provide reinvestigation results notices as required by 15 U.S.C. §1681i(a)(6). This Count does not seek liability for failure to conduct a reasonable reinvestigation (§1681i(a)(1)(A)), unauthorized dispute authorship or modification, failure to forward disputes, method-of-verification violations (§1681i(a)(7)), reinsertion violations (§1681i(a)(5)), fraud-alert or disclosure violations, or permissible-purpose violations, all of which are addressed in separate Counts.

**Count-Specific Allegations**

1. Plaintiff submitted an authorized dispute on or about December 18, 2025, regarding the LVNV Funding LLC collection tradeline and was assigned Report No. 5983-0245-00.

2. Plaintiff alleges Experian undertook dispute-coded investigation activity in connection with the LVNV tradeline and generated dispute report numbers reflecting that activity, including Report No. 1948-6511-64 and Report No. 2911-3883-44.

3. Experian issued consumer-facing communications and/or portal representations stating that the dispute investigations associated with those report numbers were completed and that results were ready for review.

4. When Plaintiff accessed the "results" corresponding to those report numbers, Experian continued to reflect the LVNV tradeline as "Pending," and Plaintiff received no written notice stating any disposition of the reinvestigation (e.g., verified, modified, deleted, or unable to verify). Plaintiff did not receive any written notice identifying a completed disposition, investigative conclusion, or statutory rights triggered by completion.

5. Plaintiff did not initiate or authorize any disputes or reinvestigation activity after June 2025. Nevertheless, on September 17, 2025, Experian generated Report No. 4160-7528-86 and informed Plaintiff that "dispute results are currently not available online." Experian did not provide Plaintiff with any written reinvestigation results by mail or otherwise identifying any disposition, verification, deletion, or modification.

6. Similarly, on August 22, 2025, Experian generated Report No. 1073-5083-36 and presented a dispute outcome labeled "Verified and Updated." However, the corresponding consumer disclosure identified no creditor, account, or tradeline as having been verified, updated, deleted, or modified, and provided no written explanation of what information was verified as accurate or what changes, if any, were made. Plaintiff placed Experian on written notice through CFPB complaints submitted in July and August 2025 that Plaintiff was seeking method-of-verification disclosures—not the initiation of disputes—yet Experian continued to generate dispute-coded activity and did not provide Plaintiff any written reinvestigation disposition identifying what, if anything, had been verified, deleted, or modified.

7. Experian's failure to provide reinvestigation results for the LVNV tradeline is further underscored by its ability to issue results for other, unrelated accounts during the same period. Plaintiff alleges that while Experian withheld any results for Plaintiff's LVNV dispute activity, Experian did issue and release dispute results concerning other accounts, including an update regarding a Credit One account that Plaintiff did not dispute and had no reason to dispute because it had been paid and closed for years, demonstrating Experian's ability to generate and release dispute results notices.

8. This selective issuance of results demonstrates that Experian was capable of generating and delivering reinvestigation results, yet failed to do so for the LVNV tradeline despite representing that results were "ready."

9. Experian did not provide Plaintiff with any written results notice identifying what conclusions were reached, what information (if any) was changed, what portion of the dispute was resolved, or what portion remained unresolved, despite representing completion and "results ready."

10. Experian's prolonged failure to provide any results notice deprived Plaintiff of the ability to understand the status and result of the reinvestigation and to meaningfully exercise rights triggered by completion of a reinvestigation.

11. By representing that the investigation(s) were completed and results were ready while failing to provide Plaintiff with the written results notice required by §1681i(a)(6), Experian violated 15 U.S.C. §1681i(a)(6).

12. This failure persisted beyond the period during which Experian represented that the investigation was completed and results were ready: Experian continued to display the LVNV tradeline as "Pending" while providing Plaintiff no written results notice

identifying any disposition, and any delay attributable to Experian's unilateral dispute-coded activity did not relieve Experian of its duty under §1681i(a)(6).

13. Experian's violations were willful and/or negligent, entitling Plaintiff to all remedies available under 15 U.S.C. §§1681n and 1681o.

**COUNT III — Failure to Provide Method of Verification**

*15 U.S.C. § 1681i(a)(7); 15 U.S.C. §§ 1681n, 1681o*

**Incorporation by Reference.** Plaintiff incorporates by reference only those preceding factual allegations relevant to this Count.

**Theory of Liability**

1. The Fair Credit Reporting Act provides that, following completion of a reinvestigation, a consumer reporting agency must, upon request by the consumer, provide a description of the method used to verify the disputed information, including the business name and address of any furnisher of information contacted and the telephone number of such furnisher if reasonably available. 15 U.S.C. § 1681i(a)(7).

2. Once a consumer makes a timely request for the method of verification, the consumer reporting agency must provide the required verification information. The statute does not permit a consumer reporting agency to substitute a new dispute, reinvestigation, or dispute-coded workflow in place of responding to a valid method-of-verification request.

3. Experian breached this duty by failing to provide any method of verification in response to Plaintiff's timely requests and instead treating Plaintiff's statutory transparency request as a new dispute and reinvestigation event.

**Limitation / Non-Duplication Clause**

This Count is limited strictly to Experian's failure to provide a method of verification as required by 15 U.S.C. § 1681i(a)(7) with respect to the SoFi Bank tradeline. This Count does not seek liability for failure to conduct a reasonable reinvestigation (§ 1681i(a)(1)(A)), failure to provide reinvestigation results (§ 1681i(a)(6)), unauthorized dispute authorship or modification, failure to forward disputes, reinsertion violations, fraud-alert or disclosure violations, or permissible-purpose violations, all of which are addressed in separate Counts.

**Count-Specific Allegations**

1. Plaintiff submitted an authorized consumer dispute on June 19, 2025 regarding the reporting of an account by SoFi Bank, N.A.

2. Experian completed a reinvestigation on or about July 10, 2025, as represented to Plaintiff, and represented that the SoFi Bank account was "verified," "verified and updated," or otherwise subject to verification-style outcomes.

3. On or about July 14, 2025, within days of Experian's verification representation, Plaintiff timely requested the method of verification for the SoFi Bank account pursuant to 15 U.S.C. § 1681i(a)(7).

4. Plaintiff sent the method-of-verification request by certified mail, U.S. Postal Service Certified Mail Tracking No. 9589 0710 5270 1675 9885 64, addressed to Experian's designated correspondence address.

5. Experian did not provide any description of the procedure used to verify the SoFi Bank account.

6. Instead of responding to the method-of-verification request as required by statute, Experian treated Plaintiff's request as a new dispute and initiated dispute-coded investigation activity without Plaintiff's authorization.

7. On or about July 22 and July 23, 2025, Plaintiff filed complaints with the Consumer Financial Protection Bureau placing Experian on written notice concerning Experian's failure to respond to the method-of-verification request and its improper treatment of the request as a dispute.

8. Plaintiff renewed her request for the method of verification in writing, yet Experian still failed to provide the required description of the method used to verify the SoFi tradeline.

9. Experian did not identify the furnisher contacted, did not provide the address of any furnisher, did not provide a telephone number, and did not disclose any verification procedure used.

10. Records reflecting any verification method, furnisher contact, or procedures relied upon are maintained exclusively by Experian and are within Experian's sole possession, custody, and control.

**COUNT IV — Failure to Provide Full File Disclosure**

*15 U.S.C. § 1681g(a)(1)–(3); 15 U.S.C. §§ 1681n, 1681o*

**Incorporation by Reference.** Plaintiff incorporates by reference only those preceding factual allegations relevant to this Count.

**Theory of Liability**

1. 15 U.S.C. § 1681g(a)(1)–(3) requires a consumer reporting agency, upon request and proper identification, to clearly and accurately disclose to the consumer:

   - all information in the consumer's file at the time of the request;
   - the sources of that information; and

- for purposes and time periods specified by the statute, the required identification information concerning persons who procured a consumer report (including, to the extent applicable, those who procured a report for employment purposes).

2. A "full file" disclosure must be complete and must include the information the Consumer Reporting Agency (CRA) records and retains as part of the consumer's file—without omitting categories of file information such as file-level conditions, dispute-coded activity history, internal status codes, and other recorded file content that is used or expected to be used in consumer reports. A CRA may not provide only partial disclosures or withhold file content where the consumer has reasonably verified identity and the CRA continues to access, modify, and disseminate the consumer file using the same identifying information.

3. Information constitutes part of the consumer's "file" under §1681g(a) when it is recorded and retained by the CRA and used or expected to be used in consumer reports or in the handling, routing, or evaluation of consumer information.

4. Experian breached these duties by failing to provide Plaintiff a complete and accurate file disclosure and by withholding file information necessary for Plaintiff to understand what Experian maintained, changed, routed, and disseminated in Plaintiff's name.

**Limitation / Non-Duplication Clause**

This Count is limited strictly to Experian's failure to provide a full file disclosure as required by 15 U.S.C. § 1681g(a)(1)–(3). This Count does not seek liability for failure to conduct a reasonable reinvestigation (§ 1681i(a)(1)(A)), failure to provide reinvestigation results (§ 1681i(a)(6)), failure to provide a method of verification (§ 1681i(a)(7)), unauthorized dispute conduct, reinsertion violations, fraud-alert placement/handling violations, accuracy-

procedure violations, or permissible-purpose violations, all of which are addressed in separate Counts.

**Count-Specific Allegations**

1. Plaintiff requested disclosure of her consumer file from Experian on multiple occasions, including in connection with dispute-coded activity, statutory transparency requests, and fraud-alert related communications.

2. At the time of Plaintiff's requests, Experian maintained recorded and retained information concerning Plaintiff's consumer file, including dispute-coded activity, dispute report numbers, account-level status information, and file-level conditions and notations reflected in Experian's systems.

3. Experian failed to provide Plaintiff with a complete consumer file disclosure as required by 15 U.S.C. §1681g. Experian did not provide any full file disclosure containing all information in Plaintiff's file at the time of Plaintiff's request. Instead, Experian provided only limited dispute-related "results" communications, which do not constitute a consumer file disclosure under the FCRA and which omitted categories of information necessary to understand what information Experian maintained, used, or expected to use in consumer reports, including dispute-coded activity, status conditions, internal handling or routing information, and retained file data.

4. Plaintiff provided Experian identity documentation and personally identifying information multiple times through multiple channels, including via certified mail and CFPB uploads. On information and belief, Experian used Plaintiff's identifying information to access and process Plaintiff's consumer file and to carry out dispute-coded activity and other file actions during the relevant period. Yet Experian failed to provide

the disclosures Plaintiff requested and the FCRA requires, including a complete

consumer file disclosure and Method of Verification.

5. Despite this, Experian repeatedly characterized Plaintiff's requests as "potential fraud" and represented in its records and communications that the dispute-coded activity was consumer-requested, while simultaneously continuing to access, modify, and act upon Plaintiff's consumer file, rather than providing the complete file disclosure required by §1681g(a).

6. By failing to disclose all information in Plaintiff's file and the sources of that information, and by providing only partial disclosures while withholding recorded file content, Experian violated 15 U.S.C. § 1681g(a)(1)–(3).

7. Records reflecting the complete contents of Plaintiff's file at the time of Plaintiff's requests—including the retained file information Experian recorded, the sources of that information, and the required disclosure identifiers for report procurement where applicable—are maintained exclusively by Experian and are within Experian's sole possession, custody, and control.

## COUNT V — Failure to Provide Summary of Rights in Connection with Fraud Alert Placement

*15 U.S.C. § 1681g(c); 15 U.S.C. §§ 1681n, 1681o*

**Incorporation by Reference.** Plaintiff incorporates by reference only those preceding paragraphs relevant to this Count.

### Theory of Liability

1. 15 U.S.C. § 1681g(c) requires a consumer reporting agency, when placing a fraud alert or otherwise engaging in fraud-alert–related activity, to provide the consumer with the

Summary of Rights prescribed by the Consumer Financial Protection Bureau, advising the consumer of rights associated with fraud alerts and identity-theft protections.

2. The duty to provide the Summary of Rights applies whenever a consumer reporting agency places or communicates a fraud alert in a consumer's file, regardless of whether the alert was consumer-requested or unilaterally placed by the agency.

3. Where a consumer reporting agency places a fraud alert, publishes fraud-alert language in the consumer's file, or communicates with the consumer regarding fraud-alert activity, the obligation to provide the Summary of Rights attaches contemporaneously with that activity.

4. Experian breached this duty by placing and disseminating a fraud alert in Plaintiff's credit file without authorization and without providing Plaintiff with the required Summary of Rights.

**Limitation / Non-Duplication Clause**

1. This Count is limited strictly to Experian's failure to provide the Summary of Rights required by 15 U.S.C. § 1681g(c) in connection with fraud-alert placement and handling. This Count does not seek liability for unauthorized fraud-alert placement, fraud-alert authorship or attribution, failure to disclose fraud-alert origin, reinvestigation violations, disclosure violations, or accuracy-procedure violations, all of which are addressed in separate Counts.

2. This Count seeks relief solely for the failure to provide the Summary of Rights required by §1681g(c), independent of whether the fraud alert was authorized or unauthorized.

**Count-Specific Allegations**

1. On or about September 18, 2025, Experian sent Plaintiff an email titled "Important Information," stating that, "As you requested, or in accordance with Experian's identity theft protection policies, an Initial Security Alert has been added to your credit file."

2. Plaintiff did not request a fraud alert, did not report identity theft, and did not authorize Experian to place any fraud or security alert in her credit file.

3. The September 18, 2025 email constituted the only notice Plaintiff received regarding the fraud alert. Plaintiff did not receive any mailed notice, written disclosure, or separate communication advising her that a fraud alert had been placed.

4. The fraud-alert's language was further written in the first person, purporting to speak in Plaintiff's voice, despite Plaintiff not authoring or approving any such statement.

5. In connection with the placement of the fraud alert and the September 18, 2025 communication, Experian did not provide Plaintiff with the Summary of Rights required by 15 U.S.C. § 1681g(c). The September 18, 2025 email did not include the CFPB-prescribed Summary of Rights and did not attach, link to, or otherwise provide the required Summary contemporaneously with the fraud-alert placement.

6. Plaintiff did not receive any contemporaneous written notice explaining her rights associated with fraud alerts, identity-theft protections, alert duration, removal procedures, or dispute options as required by the statute.

7. Records concerning whether any Summary of Rights was generated, the form used, the timing of delivery, and the method of delivery are maintained exclusively by Experian and are within Experian's sole possession, custody, and control.

## COUNT VI — Failure to Maintain Reasonable Procedures to Assure Maximum Possible Accuracy

*15 U.S.C. § 1681e(b); 15 U.S.C. §§ 1681n, 1681o*

**Incorporation by Reference.** Plaintiff incorporates by reference only those preceding factual allegations relevant to this Count.

**Theory of Liability**

1. The Fair Credit Reporting Act requires a consumer reporting agency to follow reasonable procedures to assure maximum possible accuracy of the information contained in consumer reports. 15 U.S.C. § 1681e(b).

2. This duty exists independently of any consumer dispute and governs the accuracy, consistency, attribution, and integrity of the agency's reporting systems, internal data controls, and consumer-facing representations reflected in a consumer's credit file and disclosures.

3. Experian breached this duty by maintaining, publishing, and disseminating internally inconsistent, misleading, and inaccurate information in Plaintiff's credit file and disclosures, including false attributions of dispute and fraud-related activity to Plaintiff, contradictory representations concerning dispute status and outcomes, and systemic data-integrity failures that rendered Plaintiff's file unreliable and materially misleading.

4. These inaccuracies were not isolated or clerical errors, but instead reflect unreasonable procedures and breakdowns in Experian's systems for assuring maximum possible accuracy.

**Limitation / Non-Duplication Clause**

This Count is limited strictly to Experian's failure to maintain reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b).

This Count does not seek liability for failure to conduct a reasonable reinvestigation (§ 1681i(a)(1)(A)), failure to provide reinvestigation results (§ 1681i(a)(6)), failure to provide a method of verification (§ 1681i(a)(7)), reinsertion violations, fraud-alert notice violations, or permissible-purpose violations, all of which are addressed in separate Counts.

**Count-Specific Allegations**

1  Experian generated and disseminated consumer reports and consumer-facing disclosures concerning Plaintiff's credit file that contained internally inconsistent, contradictory, and misleading information.

2  Experian represented in Plaintiff's credit file, dispute portals, and related disclosures that certain dispute activity, investigations, and fraud-related actions were initiated "at Plaintiff's request," despite Plaintiff not authorizing those disputes, investigations, or fraud-alert activity.

3  Plaintiff's communications to Experian objecting to unauthorized dispute activity, fraud-alert placement, or file modifications did not constitute consumer disputes under the Fair Credit Reporting Act. Plaintiff did not submit, request, or intend to initiate any dispute or reinvestigation in those communications, and expressly notified Experian that it lacked authorization to initiate dispute-coded activity or to attribute such actions to Plaintiff.

4  Plaintiff authorized only two consumer disputes with Experian during the relevant period: one submitted on June 19, 2025, and one submitted on December 18, 2025. Plaintiff did not initiate, request, or authorize any other disputes, reinvestigations, fraud alerts, or dispute-coded activity reflected in Experian's records or consumer-facing disclosures.

5   Experian simultaneously represented that dispute investigations were "completed" or that results were "ready," while continuing to list the same disputes as unresolved and "Pending," without any coherent or accurate explanation of status.

6   Experian reported inconsistent and irreconcilable outcomes across different accounts, disputes, and time periods without maintaining reasonable procedures to assure maximum possible accuracy. In 2025, Experian characterized certain disputed information using outcomes such as "verified," "verified and updated," or "remains," while in 2026 Experian reported other dispute activity as "pending," including dispute activity Experian modified or initiated without Plaintiff's authorization. Experian failed to maintain or apply procedures capable of consistently identifying what information was reviewed, what determinations were made, or whether any lawful investigative conclusion supported these differing outcomes.

7   These contradictory representations were reflected in Experian-generated consumer reports and disclosures and were not caused by any action, input, or authorization by Plaintiff.

8   On or about February 4, 2026, Experian generated and furnished a consumer disclosure stating that it had received a request to remove a fraud alert and that no fraud alert appeared on Plaintiff's credit file, while simultaneously displaying an active fraud alert within the same disclosure and in third-party consumer reports. These representations were irreconcilable and materially misleading, and could not both be accurate at the time they were published.

9   To date, Experian has not produced any documentation, certification or internal records sufficient to reconcile the contradictory reporting and attribution reflected in Plaintiff's file, despite continuing to update and report the tradeline month after month.

10  To date, Plaintiff's credit file reflects reporting that is at least three months late or stale, yet continues to be furnished and updated without any certification, completed results, or reliable explanation of accuracy.

11  Had Plaintiff not received an external alert, Plaintiff would not have known that adverse information had been added to or maintained in her credit file, because Experian did not contemporaneously notify Plaintiff of the reporting or accurately disclose the file-level changes.

12  The false "at your request" attributions, contradictory dispute statuses, delayed or stale reporting, and undisclosed file modifications rendered Plaintiff's consumer report inaccurate and misleading to users of consumer reports.

13  Experian failed to maintain reasonable procedures to ensure internal consistency, proper attribution, timely and accurate reporting, and data integrity across its reporting systems and consumer disclosures.

14  Records concerning Experian's internal procedures, system logic, attribution rules, reporting controls, audit trails, and decision-making processes governing these representations are maintained exclusively by Experian and are within Experian's sole possession, custody, and control.

## COUNT VII — Unauthorized Dispute-Coded Investigations

*15 U.S.C. § 1681i(a)(1)(A); 15 U.S.C. §§ 1681n, 1681o*

**Incorporation by Reference.** Plaintiff incorporates by reference only those preceding factual allegations relevant to this Count.

**Theory of Liability**

1. The Fair Credit Reporting Act permits a consumer reporting agency to conduct a reinvestigation only upon receipt of a dispute submitted by the consumer or the consumer's authorized representative. 15 U.S.C. § 1681i(a)(1)(A).

2. A consumer reporting agency may not author, initiate, modify, re-code, or expand dispute-coded investigations without the consumer's authorization, nor may it broaden the scope of dispute activity beyond the specific information actually disputed by the consumer.

3. Experian breached these duties by repeatedly initiating, modifying, and expanding dispute-coded investigations without Plaintiff's authorization, beginning after Plaintiff requested statutory transparency and continuing thereafter.

4. By falsely attributing dispute activity to Plaintiff and expanding dispute scope beyond Plaintiff's actual disputes, Experian generated inaccurate file information, triggered unauthorized reinvestigation workflows, and deprived Plaintiff of control over her own credit file.

**Limitation / Non-Duplication Clause**

This Count is limited strictly to Experian's unauthorized authorship, modification, and initiation of dispute-coded investigations without Plaintiff's consent.

This Count does not seek liability for failure to conduct a reasonable reinvestigation, failure to provide reinvestigation results, method-of-verification violations, reinsertion violations,

fraud alert handling, permissible-purpose violations, or accuracy-procedure violations, all of which are addressed in separate Counts.

**Count-Specific Allegations**

1. Plaintiff submitted an authorized consumer dispute to Experian concerning a specific account, which Experian represented as completed, and later submitted a statutory request for the method of verification related to that dispute.

2. Plaintiff's method-of-verification request was a transparency request under the FCRA and did not authorize the initiation of any new dispute or reinvestigation.

3. On or about July 22, 2025, instead of responding to Plaintiff's method-of-verification request as required by statute, Experian initiated dispute-coded investigation activity without Plaintiff's authorization.

4. Thereafter, Experian repeatedly authored, modified, and re-coded dispute-coded investigations concerning Plaintiff's credit file without Plaintiff's consent.

5. Experian did not notify Plaintiff that her authorized dispute had been altered, did not disclose that additional dispute-coded investigations had been initiated, and did not provide any response resolving the original authorized dispute.

6. As part of this unauthorized conduct, Experian expanded dispute-coded activity to include accounts Plaintiff did not dispute.

7. By way of example, on or about December 23, 2025, an Experian specialist modified and/or re-coded Plaintiff's authorized dispute regarding the LVNV tradeline without Plaintiff's consent.

8. On or about the same date, an Experian specialist initiated dispute-coded investigation activity concerning an account reported by Credit One Bank, despite Plaintiff not disputing that account and not authorizing any investigation related to it.

9. The Credit One Bank account had been paid and closed for years and was not the subject of any dispute submitted by Plaintiff.

10. Experian did not obtain Plaintiff's consent to investigate or re-investigate the Credit One Bank account and did not provide Plaintiff with any results explaining such investigation.

11. Experian's unauthorized dispute-coded activity was not isolated, but constituted a continuing course of conduct beginning on or about July 22, 2025, during which Experian initiated multiple dispute-coded workflows without authorization while the limited disputes Plaintiff actually submitted remained unresolved.

12. Records reflecting the authorship, initiation, modification, scope, timing, and internal routing of these dispute-coded investigations are maintained exclusively by Experian and are within Experian's sole possession, custody, and control.

**COUNT VIII — Misuse of Identity-Theft Processing**

*15 U.S.C. §1681c-2; §§1681n, 1681o*

**Incorporation by Reference.** Plaintiff incorporates by reference only those preceding paragraphs relevant to this Count.

**Theory of Liability**

1. The Fair Credit Reporting Act provides a specific, limited process for blocking information resulting from identity theft under 15 U.S.C. §1681c-2 (§605B). That process applies only when a consumer submits an identity-theft report and requests a block of information on that basis.

2. Plaintiff did not submit, request, or authorize any identity-theft report, fraud-related claim, or §605B request, and any representation by Experian that such a request was made by Plaintiff is inaccurate.

3. A consumer reporting agency may not unilaterally invoke §605B procedures, reframe non-identity-theft requests as identity-theft claims, or require police reports or FTC identity-theft affidavits as a precondition to complying with unrelated statutory duties.

4. Experian breached these duties by improperly invoking identity-theft processing, demanding police or FTC reports, and using §605B workflows in response to Plaintiff's non-identity-theft statutory requests in a manner inconsistent with the Fair Credit Reporting Act, including Plaintiff's lawful requests for reinvestigation results, method of verification, and full file disclosures.

**Limitation / Non-Duplication Clause**

1. This Count is limited strictly to Experian's misuse of identity-theft and §605B processing under 15 U.S.C. §1681c-2.

2. This Count does not seek liability for unauthorized fraud-alert placement, fraud-alert handling procedures, failure to disclose fraud-alert origin, failure to conduct a reasonable reinvestigation, failure to provide reinvestigation results, unauthorized dispute authorship, or disclosure violations, all of which are addressed in separate Counts.

**Count-Specific Allegations**

1. Plaintiff did not submit an identity-theft report, police report, or FTC identity-theft affidavit requesting a block of information under 15 U.S.C. §1681c-2.

2. Plaintiff submitted requests to Experian seeking statutory compliance unrelated to identity theft, including requests for reinvestigation results, method of verification,

disclosure of file information, disclosure of the origin and basis of any fraud alert, and certification and notice requirements related to any reinsertion or reappearance of previously deleted information.

3. Experian improperly reframed Plaintiff's non-identity-theft requests as identity-theft-related matters and invoked §605B processing without Plaintiff's authorization.

4. Experian demanded that Plaintiff submit police reports or FTC identity-theft documentation as a condition of responding to Plaintiff's requests.

5. Plaintiff further alleges that Experian invoked identity-theft (§605B) processing on more than one occasion, each time in response to Plaintiff's statutory requests unrelated to identity theft.

6. Specifically, Experian invoked identity-theft processing in or about 2025 following Plaintiff's request for method-of-verification and full-file disclosure.

7. Experian again invoked identity-theft processing in or about January 2026 following Plaintiff's request for reinsertion certification and related statutory disclosures.

8. On neither occasion did Plaintiff submit an identity-theft report, police report, or FTC affidavit, and on neither occasion did Plaintiff request a block of information under 15 U.S.C. §1681c-2.

9. Experian used identity-theft processing workflows in a manner that delayed or suspended responses to Plaintiff's statutory requests.

10. Experian's invocation of §605B procedures was not based on any identity-theft report submitted by Plaintiff and was inconsistent with the scope and purpose of 15 U.S.C. §1681c-2.

11. Records reflecting Experian's decision to invoke §605B procedures, its communications demanding identity-theft documentation, and its internal processing of Plaintiff's requests are maintained exclusively by Experian.

## COUNT IX — Unauthorized Fraud Alert Placement and Dissemination

*15 U.S.C. §1681c-1(a); §§1681n, 1681o*

**Incorporation by Reference.** Plaintiff incorporates by reference only those preceding paragraphs relevant to this Count.

## Theory of Liability

1. The Fair Credit Reporting Act permits a consumer reporting agency to place an initial fraud alert in a consumer's credit file only upon the consumer's request and only in the manner prescribed by statute, including required disclosures and creditor contact information.

2. A consumer reporting agency may not unilaterally place a fraud alert, may not author or attribute a fraud alert statement to the consumer without authorization, and may not disseminate or publish a fraud alert to third parties absent a valid consumer request.

3. Experian breached these duties by placing, authoring, publishing, and disseminating a fraud alert in Plaintiff's credit file without Plaintiff's request or authorization, falsely attributing the alert to Plaintiff, omitting required contact information, and furnishing the alert to third parties including other nationwide consumer reporting agencies.

## Limitation / Non-Duplication Clause

1. This Count is limited strictly to Experian's unauthorized placement, authorship, and dissemination of a fraud alert under 15 U.S.C. §1681c-1(a).

2. This Count does not seek liability for misuse of identity-theft processing under §1681c-2, failure to disclose the origin or basis of the fraud alert, failure to provide a Summary of Rights, or fraud-alert handling procedures, each of which is addressed in separate Counts.

**Count-Specific Allegations**

1. Plaintiff did not request the placement of any fraud or security alert in her credit file and did not authorize Experian to author, attribute, or publish any fraud alert statement in her name

2. Prior to the placement or dissemination of any fraud or security alert, Plaintiff expressly informed Experian—through a CFPB complaint and supporting submissions—that Plaintiff was not alleging fraud, was not a victim of identity theft, and was requesting only the Method of Verification required by 15 U.S.C. § 1681i(a)(7). Despite this notice, Experian mischaracterized Plaintiff's request as fraud-related, invoked fraud- or identity-theft–coded workflows, and placed and disseminated a fraud/security alert in Plaintiff's consumer file, including by representing in a written communication dated September 18, 2025 that it had shared the alert with Equifax and TransUnion. Experian did not disclose who initiated the alert, when or why it was placed, what documentation (if any) supported it, or what third parties received fraud-alert signaling while it was active. Placing and disseminating fraud-alert signaling after Plaintiff expressly denied fraud, followed by nondisclosure of the alert's origin and basis, is objectively unreasonable and supports an inference of reckless disregard under 15 U.S.C. § 1681n.

3. Nevertheless, on or about September 17, 2025, Experian placed an "Initial Security Alert" in Plaintiff's credit file, authored the alert in the first person as if written by Plaintiff, omitted required creditor contact information for verification.

4. On or about February 4, 2026, Experian generated and furnished a consumer disclosure stating that "records indicate that your credit report does not display a fraud alert," while simultaneously displaying file-level fraud/security alert content within the same disclosure, including an "INITIAL SECURITY ALERT" with a defined effective period stated as "1 YEAR BEGINNING 09-17-25" and "1 YEAR ENDING 09-17-26."

5. Contemporaneously, an independently obtained third-party consumer report also displayed the same "Initial Security Alert (without phone number)" and reflected that the alert would be maintained for one year beginning 09-17-25.

6. In written communications to Plaintiff, Experian expressly stated that the fraud alert was added "as you requested" and further represented that it had shared the fraud alert with Equifax and TransUnion. Plaintiff did not request or authorize the fraud alert and did not authorize Experian to attribute the alert to her or to disseminate it to other consumer reporting agencies. By falsely attributing the fraud alert to Plaintiff and furnishing it to third parties, Experian disseminated fraud-alert information without a valid consumer request and expanded the scope of harm.

7. By authoring and disseminating a fraud alert written in the first person and attributing it to Plaintiff without authorization, Experian used Plaintiff's personally identifying information to publish a false consumer statement.

8. These representations were irreconcilable and materially misleading and could not both be accurate at the time they were published.

9. To date, Experian has not issued any consistent consumer disclosure or produced any documentation identifying the source, basis, or authorization for the fraud alert, and has

not reconciled its conflicting representations that both deny and display the alert while attributing it to Plaintiff.

10. Experian maintained and disseminated the fraud/security alert for months after initial placement. For example, a third-party consumer report dated January 31, 2026 displayed the "Initial Security Alert (without phone number)" and stated it would be maintained for one year beginning 09-17-25.

11. By falsely attributing the fraud alert to Plaintiff and disseminating it to third parties, including Equifax and TransUnion, Experian published and furnished fraud-alert information without a valid consumer request and outside the procedures permitted by 15 U.S.C. §1681c-1(a).

12. Records identifying who initiated, authored, approved, disseminated, maintained, and transmitted the fraud alert — including any communications forwarding the alert to Equifax and TransUnion and any record of the creditor contact information associated with the alert — are maintained exclusively by Experian and are within Experian's sole possession, custody, and control.

**COUNT X — Failure to Disclose Fraud-Alert Origin, Basis, and Accurate File Contents**

*15 U.S.C. §1681g(a)(1); §§1681n, 1681o*

**Incorporation by Reference.** Plaintiff incorporates by reference only those preceding paragraphs relevant to this Count.

**Theory of Liability**

The Fair Credit Reporting Act requires a consumer reporting agency, upon request, to clearly, accurately, and completely disclose all information in the consumer's file, including fraud

alerts, consumer statements, and the source, origin, timing, and attribution information recorded in the consumer's file concerning such information

This disclosure obligation is independent of whether the information was properly or improperly placed. A consumer reporting agency may not misstate the contents of a consumer's file, conceal material information, or provide contradictory representations regarding the presence or absence of file information.

**Limitation / Non-Duplication Clause**

1. This Count is limited strictly to Experian's failure to accurately disclose fraud-alert information and its false and contradictory representations regarding Plaintiff's file under 15 U.S.C. §1681g(a)(1).

2. This Count does not seek liability for unauthorized fraud-alert placement (§1681c-1(a)), misuse of identity-theft processing (§1681c-2), fraud-alert handling procedures, or reinvestigation duties, which are addressed in separate Counts.

3. This Count challenges Experian's disclosure of file contents, not the legality of the fraud alert's placement.

**Count-Specific Allegations**

1. A fraud alert appeared in Plaintiff's Experian consumer file beginning on or about September 17, 2025, with a stated duration of one year.

2. The fraud alert was published as a first-person consumer statement attributed to Plaintiff.

3. Plaintiff did not request, authorize, or submit any fraud-alert statement.

4. Plaintiff requested disclosure of her Experian consumer file, including information relating to any fraud alerts.

5. In a consumer disclosure generated on February 4, 2026, Experian affirmatively stated that Plaintiff's credit report did not display a fraud alert.

6. In the same disclosure, Experian simultaneously displayed the fraud alert within Plaintiff's file under the "Personal Statements" section. Both representations were presented to Plaintiff as authoritative disclosures of her file contents and could not both be accurate at the time they were furnished.

7. Because Experian used Plaintiff's identifying information to access, modify, and disseminate Plaintiff's consumer file, Experian treated Plaintiff as authenticated for file activity and could not misstate file contents or refuse accurate disclosure on the ground of purported identity concerns.

8. Experian did not disclose who initiated, authored, or approved the fraud alert.

9. Experian did not disclose the method, system, documentation, or basis relied upon to generate the fraud alert.

10. Experian did not disclose whether the fraud alert was consumer-requested, system-generated, or third-party-assisted. Plaintiff seeks disclosure of information recorded and retained in her consumer file regarding the fraud alert's source and attribution, not internal decision-making policies.

11. Experian's contradictory representations regarding the existence of the fraud alert rendered its disclosure inaccurate and materially misleading.

12. Plaintiff remains unable to determine the origin, authorization, or basis recorded in her file for the fraud alert despite repeated written requests and notices, including submissions through the Consumer Financial Protection Bureau portal to which Experian responded.

13. Experian falsely represented that any fraud alert existed while simultaneously displaying an "INITIAL SECURITY ALERT" in numerous consumer file disclosures, thereby failing to provide a complete and accurate file disclosure in violation of 15 U.S.C. §1681g(a)(1).

14. Experian's written communications also stated the alert was added "per your request" and shared with other consumer reporting agencies, and the alert appeared on third-party consumer reports Plaintiff obtained.

15. Records identifying the origin, authorship, system source, and disclosure logic for the fraud alert are maintained exclusively by Experian.

## COUNT XI — Unlawful Reinsertion Without Required Certification

*15 U.S.C. §1681i(a)(5)(B); §§1681n, 1681o*

**Incorporation by Reference.** Plaintiff incorporates by reference only those preceding paragraphs relevant to this Count.

### Theory of Liability

1. The Fair Credit Reporting Act prohibits a consumer reporting agency from reinserting information previously deleted from a consumer's file, unless, before reinsertion, the agency receives a certification of accuracy from the furnisher of that information.

2. The certification must exist at the time of reinsertion and is a statutory prerequisite to any lawful reappearance of deleted information, regardless of the name or identity under which the information is later reported.

### Limitation / Non-Duplication Clause

This Count is limited strictly to Experian's violation of 15 U.S.C. §1681i(a)(5)(B) for reinserting previously deleted information without first obtaining the required certification of

accuracy. This Count does not seek liability for failure to provide reinsertion notice (§1681i(a)(5)(C)), failure to conduct a reasonable reinvestigation, failure to provide reinvestigation results, unauthorized dispute conduct, disclosure violations, or accuracy-procedure violations, all of which are addressed in separate Counts.

**Count-Specific Allegations**

1. An account originally reported by SoFi Bank was deleted from Plaintiff's Experian credit file on or about September 10, 2025.

2. On or about December 18, 2025, information reflecting the same underlying obligation, account history, and debt characteristics reappeared on Plaintiff's Experian credit file as an LVNV collection tradeline, with SoFi Bank identified as the original creditor.

3. The reappearance of the information constituted a reinsertion of information previously deleted, within the meaning of 15 U.S.C. §1681i(a)(5), notwithstanding any change in furnisher name or account labeling.

4. Prior to reinserting the previously deleted information, Experian was required by 15 U.S.C. §1681i(a)(5)(B) to obtain a certification of accuracy from the furnisher of the reinserted information, which certification was required to exist before the information reappeared in Plaintiff's file; upon information and belief, Experian did not obtain any such certification from any furnisher prior to reinsertion.

5. On or about December 23, 2025, after discovering the reappearance, Plaintiff sent Experian a written request seeking disclosure of the furnisher certification required by 15 U.S.C. §1681i(a)(5)(B), which the statute makes a prerequisite to lawful reinsertion.

6. Experian did not produce any certification of accuracy, did not identify any furnisher that provided such certification, and did not provide documentation reflecting that any certification existed at the time of reinsertion.

7. In response to Plaintiff's written request for reinsertion certification, Experian did not provide the required certification or notice. Instead, Experian initiated dispute-coded activity concerning the same account information, thereby substituting dispute processing for its statutory reinsertion obligations.

8. Experian's initiation of dispute-coded activity in response to Plaintiff's mailed request for reinsertion certification demonstrates that Experian had the operational capacity to act on the account information, yet Experian did not provide the reinsertion certification or notice required by 15 U.S.C. §1681i(a)(5)(B).

9. The reinsertion therefore occurred in violation of 15 U.S.C. §1681i(a)(5)(B).

10. Records concerning any alleged certification of accuracy, the identity of any furnisher, and the timing of any such certification are maintained exclusively by Experian.

**COUNT XII — Failure to Provide Mandatory Reinsertion Notice**

*15 U.S.C. §1681i(a)(5)(C); §§1681n, 1681o*

**Incorporation by Reference.** Plaintiff incorporates by reference only those preceding paragraphs relevant to this Count.

**Theory of Liability**

The Fair Credit Reporting Act requires a consumer reporting agency that reinserts previously deleted information into a consumer's credit file to provide the consumer with written notice of the reinsertion within five business days. The notice must include the information reinserted, the name, address, and telephone number of the furnisher, and a statement of the consumer's rights.

**Limitation / Non-Duplication Clause**

This Count is limited strictly to Experian's failure to provide the reinsertion notice required by 15 U.S.C. §1681i(a)(5)(C). This Count does not seek liability for unlawful reinsertion without certification (§1681i(a)(5)(B)), failure to conduct a reasonable reinvestigation, failure to provide reinvestigation results, unauthorized dispute conduct, disclosure violations, or accuracy-procedure violations, all of which are addressed in separate Counts.

**Count-Specific Allegations**

1. Information previously deleted from Plaintiff's Experian credit file reappeared on or about December 18, 2025 as an LVNV collection tradeline identifying SoFi Bank as the original creditor.

2. The reappearance constituted a reinsertion of information previously deleted from Plaintiff's credit file within the meaning of 15 U.S.C. §1681i(a)(5), regardless of any change in furnisher name or account labeling.

3. Under 15 U.S.C. §1681i(a)(5)(C), Experian was required to provide Plaintiff written reinsertion notice within five business days after the reinsertion.

4. Experian did not provide Plaintiff any written reinsertion notice within five business days after the reinsertion, and Plaintiff never received a reinsertion notice that complied with §1681i(a)(5)(C).

5. Experian did not provide a notice identifying the reinserted information, the name, address, and telephone number of the furnisher, or a statement of Plaintiff's rights as required by §1681i(a)(5)(C).

6. Plaintiff learned of the reinsertion only by independently reviewing her credit file, not from any reinsertion notice sent by Experian.

7. On or about December 23, 2025, Plaintiff requested reinsertion-related information from Experian, including the reinsertion notice and supporting documentation, yet Experian did not provide any reinsertion notice containing the disclosures required by §1681i(a)(5)(C).

8. By failing to provide the mandatory reinsertion notice, Experian violated 15 U.S.C. §1681i(a)(5)(C).

9. Records concerning the timing, content, and delivery of any reinsertion notice are maintained exclusively by Experian.

**COUNT XIII — Failure to Maintain Reasonable Procedures to Assure Permissible Purpose and Lawful Furnishing**

*15 U.S.C. §§ 1681b(a), 1681e(a)*

**Incorporation by Reference.** Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Theory of Liability**

1. The Fair Credit Reporting Act requires a consumer reporting agency to maintain reasonable procedures to ensure that consumer reports are furnished only for purposes permitted by law and only to persons that have certified a permissible purpose, and to prevent furnishing where no lawful basis exists. 15 U.S.C. §§ 1681b(a), 1681e(a).

2. Reasonable procedures under §§1681b(a) and 1681e(a) include procedures to:

   • obtain and retain certifications of permissible purpose from requestors;

   • ensure that any claimed permissible purpose is current, lawful, and supported at the time of furnishing; and

- retain records sufficient to identify and explain the permissible purpose relied upon for each furnishing, including upon consumer inquiry.

3. Plaintiff alleges that Experian failed to maintain and follow reasonable procedures to ensure that Plaintiff's consumer report was furnished only for permissible purposes supported by valid certifications, including failing to maintain records reflecting verification, documentation, or retention of a current permissible purpose and certification at or before the time of furnishing.

**Illustrative Furnishing Events Demonstrating Procedural Failures**

1. Experian's inquiry records reflect that SoFi Bank, N.A. accessed Plaintiff's consumer report on or about January 6, 2026, after SoFi had sold or transferred the underlying account on or about July 31, 2025.

2. Plaintiff did not apply for new credit with SoFi after that transfer, did not seek a credit increase or other extension of credit, and did not otherwise authorize SoFi to obtain Plaintiff's consumer report during that period.

3. Based on the timing and context of the access—occurring after the sale or transfer of the account and during a period in which Plaintiff was seeking statutory certification and transparency from Experian—Plaintiff alleges that Experian's procedures were unreasonable to the extent that Experian furnished Plaintiff's consumer report where its records do not reflect verification or documentation of a current permissible purpose and certification at the time of access.

4. Experian has not identified to Plaintiff any permissible purpose or certification supporting SoFi's access, and records identifying the purpose and certification relied upon for that furnishing are maintained exclusively by Experian.

5. Experian's inquiry records also reflect that Credit Control, LLC, a third-party debt collector claiming to act on behalf of LVNV Funding LLC, accessed Plaintiff's consumer report in connection with collection activity.

6. Credit Control was not the owner of the account and acted, if at all, solely as a third-party collector. Plaintiff did not authorize Credit Control to access her consumer report.

7. Experian has not identified or disclosed the permissible purpose or certification supporting its furnishing of Plaintiff's consumer report to Credit Control, nor disclosed what procedures Experian used to verify and document that Credit Control had a current, lawful basis to obtain Plaintiff's report at the time of access.

8. Plaintiff does not allege in this Count that SoFi Bank, N.A. or Credit Control, LLC violated the Fair Credit Reporting Act. These furnishing events are pled solely as concrete examples demonstrating Experian's failure to maintain reasonable procedures to verify, document, and control lawful furnishing under §§1681b(a) and 1681e(a).

9. Despite maintaining inquiry records reflecting third-party access to Plaintiff's consumer report, Experian's records do not reflect verification, documentation, or retention of a current permissible purpose or certification at the time the consumer report was furnished to SoFi Bank, N.A. or Credit Control, LLC, demonstrating a failure to maintain reasonable procedures under 15 U.S.C. §§1681b(a) and 1681e(a).

**Procedural Deficiencies**

1. Plaintiff alleges that Experian failed to maintain reasonable procedures to:

- verify whether requestors had a current and lawful permissible purpose at the time of furnishing;

76

- ensure that certifications relied upon for furnishing remained valid in light of account sale, transfer, or changes in collection status;

- prevent furnishing where available information indicated that the requestor no longer had a permissible purpose; and

- retain and be able to identify, and upon consumer inquiry to meaningfully disclose, the permissible purpose and certification relied upon for each furnishing.

2. These failures were compounded by Experian's broader pattern of opaque file handling and contradictory consumer disclosures, which prevented Plaintiff from determining when, why, and to whom Plaintiff's consumer report was furnished and under what claimed authority.

**Harm**

1.  As a result of Experian's failure to maintain reasonable procedures to assure permissible purpose and lawful furnishing, Plaintiff suffered concrete harm including:

- loss of control over her consumer report;

- heightened risk of unauthorized dissemination of sensitive personal information;

- invasion-of-privacy type injury arising from unexplained third-party access;

- emotional distress; and

- inability to meaningfully monitor, challenge, or prevent furnishing of her consumer report due to Experian's failure to retain and disclose the permissible-purpose basis for access.

2. Experian's violations were willful and/or negligent, entitling Plaintiff to all remedies available under 15 U.S.C. §§1681n and 1681o.

**Discovery Reservation**

Plaintiff pleads the foregoing furnishing events as illustrative examples only. Additional furnishing events, requesting entities, certifications, and permissible-purpose records are maintained exclusively by Experian and will be confirmed through discovery.

**COUNT XIV— Deceptive Acts and Practices** N.Y. *General Business Law §349*

**Incorporation by Reference**

Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein, except to the extent such paragraphs allege violations of the Fair Credit Reporting Act based solely on federally preempted statutory duties; this Count is based exclusively on Experian's deceptive consumer-facing communications and misrepresentations, not on the accuracy, completeness, or legal sufficiency of credit reporting itself.

**Theory of Liability**

1. New York General Business Law §349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce that are consumer-oriented, materially misleading, and cause injury.

2. Experian engaged in consumer-oriented deceptive practices by sending Plaintiff standardized, consumer-facing communications that misrepresented the nature of Plaintiff's actions, falsely attributed requests to Plaintiff that she did not make, and misled Plaintiff regarding Experian's handling of her credit file, including whether Experian was responding to Plaintiff's requests, investigating identity theft, or lawfully processing disputes.

3. These deceptive acts were separate from and independent of Experian's statutory duties under the FCRA, and instead concerned how Experian communicated with Plaintiff as a consumer about what it was doing and why.

4. Even if Experian had fully complied with all technical requirements of the FCRA, the consumer-facing representations challenged here would still be materially misleading because they falsely attributed actions and intentions to Plaintiff and misrepresented the nature and basis of Experian's conduct.

5. Plaintiff does not seek to enforce the Fair Credit Reporting Act through this claim, but instead challenges Experian's deceptive consumer-facing communications and misrepresentations concerning Plaintiff's actions and Experian's internal handling of her file.

**Deceptive Acts and Practices**

Experian's deceptive conduct included, but was not limited to, the following:

**1. Misrepresenting Consumer Requests**

Experian repeatedly sent Plaintiff consumer-facing communications stating that Experian was "responding to your request," including representations that Plaintiff had requested identity-theft protections, fraud-related processing, or blocking of information, when Plaintiff made no such requests.

**2. False Attribution of Identity-Theft Claims**

Experian characterized Plaintiff's lawful requests for disclosure, verification, and explanation of unauthorized activity as involving "potential fraud" or identity theft, despite Plaintiff not submitting any identity-theft report, police report, or FTC affidavit, and despite Plaintiff expressly disputing Experian's framing.

Experian's use of 'potential fraud' was deceptive because it simultaneously and inconsistently treated Plaintiff as unauthorized for purposes of disclosure while treating her as authenticated for purposes of accessing, modifying, and disseminating her consumer file.

Plaintiff does not allege that the mere use of cautionary language is deceptive; rather, the deception arose from Experian's contradictory representations and conduct concerning Plaintiff's authorization, identity status, and file handling.

### 3. Misleading Use of Official-Sounding Language

Experian's communications conveyed the false impression that Experian was acting in response to Plaintiff's instructions and in compliance with applicable procedures, when in fact Experian was initiating unauthorized activity, withholding information, and refusing to provide requested disclosures.

### 4. Obscuring the True Cause of Harm

By falsely attributing actions to Plaintiff and mischaracterizing her communications, Experian obscured the true source of the problems in Plaintiff's credit file, impeded Plaintiff's ability to understand and correct the situation, and diverted Plaintiff into irrelevant and burdensome identity-theft workflows.

### Consumer-Oriented Conduct

Experian's deceptive acts were consumer-oriented. The communications at issue were standardized form letters and electronic notices sent to consumers nationwide, not individualized contractual negotiations, and were designed to influence how consumers understand and respond to Experian's handling of their credit files.

### Materiality

Experian's misrepresentations were material. A reasonable consumer would find it important to know whether:

- Experian was acting based on an actual consumer request,
- identity theft had been alleged or confirmed, or

- Experian was lawfully processing disputes and disclosures.

These misrepresentations affected Plaintiff's decisions regarding how to respond, whether additional documentation was required, and how to protect her credit.

**Injury**

As a direct and proximate result of Experian's deceptive acts and practices, Plaintiff suffered actual injury, including but not limited to:

- loss of time and resources responding to misleading communications,

- confusion and distress caused by false attribution of identity-theft claims,

- interference with Plaintiff's ability to correct inaccuracies in her credit file, and

- continued harm arising from Experian's ongoing reporting of disputed and uncertified information.

Plaintiff's injuries were caused by the deceptive nature of Experian's communications themselves, which induced Plaintiff to expend time and resources responding to false premises, diverted her into unnecessary identity-theft processes, and delayed her ability to obtain accurate information about her credit file.

These injuries are separate from statutory damages under the FCRA and independently actionable under GBL §349.

**Additional Deceptive Conditioning of Disclosure on Identity Verification**

Experian further engaged in deceptive acts and practices by demanding that Plaintiff provide additional sensitive personal identifying information—including government-issued identification, utility bills, and Social Security information—as a precondition to responding to Plaintiff's lawful requests, while simultaneously accessing, modifying, disputing, deleting, and

reinserting information in Plaintiff's credit file without Plaintiff's authorization and without providing the requested disclosures.

These communications falsely conveyed that Experian was unable to act without further verification, while in reality Experian continued to exercise unilateral control over Plaintiff's credit file and personal data. A reasonable consumer would be misled into believing that Experian was constrained from responding, when Experian was in fact actively altering Plaintiff's file and initiating dispute activity during the same period. This deceptive conditioning concerned how Experian represented its ability and willingness to respond to Plaintiff as a consumer, not whether Experian ultimately complied with any particular federal reporting standard.

**Willfulness (Pled in the Alternative)**

Experian's deceptive acts and practices were knowing and/or willful within the meaning of N.Y. General Business Law §349(h). Experian continued to issue standardized, materially misleading consumer-facing communications after repeated notice from Plaintiff that she had not requested identity-theft processing, fraud-related protections, or blocking of information, and after Plaintiff expressly disputed Experian's characterization of her statutory requests.

Despite this notice, Experian persisted in sending communications falsely attributing requests to Plaintiff, invoking identity-theft framing, and conditioning disclosure on unnecessary verification, while simultaneously altering and processing Plaintiff's credit file. This continued course of conduct supports a reasonable inference that Experian's deception was not an isolated clerical error, but a knowing or reckless practice carried out through standardized workflows and form communications.

**Relief**

Plaintiff seeks all relief available under N.Y. GBL §349, including actual damages, statutory damages, injunctive relief, attorneys' fees, and costs.

## IX. PRAYER FOR RELIEF

For these reasons, Plaintiff respectfully demands judgment in her favor and against Defendant, Experian Information Solutions, Inc. ("Experian"), and requests the following relief to the fullest extent permitted by law:

### I. Actual Damages

*(15 U.S.C. §§ 1681n(a)(1)(A), 1681o(a)(1))*

Actual damages for injuries directly and proximately caused by Experian's willful and/or negligent violations of the Fair Credit Reporting Act ("FCRA"), including but not limited to:

Emotional Distress / Dignitary Harm

Damages for sustained anxiety, humiliation, fear, frustration, confusion, and loss of peace of mind arising from Experian's opaque, contradictory, and misleading handling of Plaintiff's consumer file, including unauthorized dispute-coded activity, misuse of identity-theft processing, reinsertion without certification or notice, and the unauthorized placement and authorship of a fraud alert.

### Reputational Harm / Credit-Standing Injury

Damages for stigma and reputational injury resulting from the publication or dissemination of confusing, inaccurate, contradictory, and fraud-coded file signals, including the false appearance of identity-theft association, consumer-authored fraud statements, unreliable tradeline status, and unexplained third-party access to Plaintiff's consumer report.

Informational Injury / Denial of Required Information

Damages for the denial of required disclosures and the resulting inability to understand, challenge, and correct Plaintiff's consumer file, including failure to disclose fraud-alert origin and basis, failure to provide reinvestigation results, failure to provide method-of-verification responses, failure to provide full file disclosures, failure to disclose permissible-purpose certifications, and failure to disclose reinsertion certification and notice.

**Loss of Control Over Personal Identifying Information ("PII")**

Damages for misuse of Plaintiff's identifying information and unconsented file manipulation, including dispute-coded and fraud-related processing conducted in Plaintiff's name without authorization, attribution of consumer statements Plaintiff did not author, and the use of Plaintiff's PII to initiate investigations and alerts without consent.

**Out-of-Pocket Costs and Economic Damages**

Including certified-mail costs, document preparation, postage, printing and scanning, monitoring costs beyond baseline, and substantial time diverted to investigating and monitoring Plaintiff's consumer file, submitting disputes or statutory requests for information (including requests for disclosures, fraud-alert information, certification, and reinsertion documentation), following up after noncompliance, and mitigating Experian's conduct.

**Fraud-Alert–Related Losses**

Damages arising from the placement and maintenance of a fraud alert Plaintiff did not request, including impairment in identity verification, dissemination of fraud signaling to third parties and other consumer reporting agencies, and stigma associated with a fraud alert authored in Plaintiff's name without a consumer phone number and without transparency regarding its origin, basis, or authorship.

These harms were a foreseeable consequence of Experian's unilateral placement, authorship, and dissemination of a fraud alert without consumer request or transparency.

**Continuing Harm (Including Post-Notice Contradictory File Representations and Third-Party Dissemination)**

Plaintiff has suffered and continues to suffer ongoing informational, reputational, and emotional harm as a result of Experian's post-notice conduct and its refusal to provide clear, non-contradictory consumer disclosures. Despite Plaintiff's repeated written demands that Experian cease initiating or modifying dispute-coded activity without authorization and provide complete, intelligible disclosures concerning the status and handling of her consumer file, Experian continued to generate file events while simultaneously issuing internally inconsistent representations—denying the existence of a fraud alert in one consumer-facing disclosures while displaying and maintaining that same fraud alert, including first-person fraud-indicator language, in that very same disclosure and in others.

Experian further failed to disclose the origin, basis, or source documentation for the fraud alert and related dispute activity, and continued to withhold reinsertion certification and notice required by statute. These contradictions and omissions have created ongoing uncertainty regarding the contents and status of Plaintiff's consumer file, materially impairing Plaintiff's ability to exercise control over her information, verify what is being reported, and prevent further improper modification or dissemination of her data. The harm has been compounded by Experian's dissemination of the fraud alert and associated fraud-indicator conditions to third parties. During the period in which Experian has continued to maintain unresolved fraud signaling and contradictory file representations, Plaintiff has observed continued third-party access to her consumer report. Because Experian has withheld the information necessary to

determine what file-level conditions are active, who initiated them, and what representations are being furnished, Plaintiff has been unable to meaningfully assess or mitigate the reputational and credit-related consequences of that dissemination. The resulting loss of control, ongoing reputational risk, and persistent uncertainty have caused continuing emotional distress and constitute concrete, ongoing harm. To date, Experian has not provided the requested statutory disclosures or a non-contradictory explanation of its file activity.

## II. Statutory Damages

*(15 U.S.C. § 1681n(a)(1)(A))*

Statutory damages for each willful violation of the FCRA, to the extent proven at trial, in an amount the Court deems just within the range authorized by 15 U.S.C. § 1681n(a)(1)(A).

## III. Punitive Damages

*(15 U.S.C. § 1681n(a)(2))*

Punitive damages for Experian's willful violations demonstrating reckless disregard of Plaintiff's rights and the statutory scheme, in an amount sufficient to punish and deter.

## IV. Declaratory Relief

A declaration that Experian violated the FCRA and N.Y. General Business Law § 349, including with respect to Experian's reinvestigation practices, misuse of identity-theft processing, fraud-alert placement and handling, disclosure practices, reinsertion practices, and permissible-purpose and furnishing procedures, as alleged.

## V. Injunctive and Equitable Relief (To the Extent Permitted)

Plaintiff does not seek injunctive relief under the FCRA except to the extent such relief is available as ancillary equitable relief in aid of declaratory relief or under applicable state law.

Plaintiff seeks injunctive and equitable relief to the extent permitted under applicable law, including under N.Y. General Business Law § 349, and any ancillary equitable relief necessary to effectuate declaratory relief and prevent continuing harm, including an order requiring Experian to:

**Remove Unauthorized Fraud Alert and Associated Coding**

Remove the fraud alert and any associated internal coding, consumer statements, fraud-related annotations, or signaling maintained or disseminated in connection with that alert.

- Provide a Complete File Disclosure
- Provide Plaintiff a complete consumer file disclosure as required by the FCRA, including, at minimum, the information required by 15 U.S.C. § 1681g, and to the extent maintained, dispute-history information, fraud-alert origin and maintenance data, reinsertion records, certification records, and material file-change history sufficient to understand what Experian maintained, generated, and relied upon.
- Disclose Fraud-Alert Origin and Authorship
- Identify who initiated, authored, approved, disputed, removed, or re-published the fraud alert; when each such action occurred; and the basis and documentation relied upon.
- Correct Inaccurate File Representations
- Correct materially inaccurate or misleading consumer-facing representations, including contradictory statements regarding fraud-alert presence, dispute outcomes, and reinvestigation status.
- Implement Reasonable Procedures
- Implement and/or apply reasonable procedures, consistent with existing statutory obligations, to assure maximum possible accuracy and lawful processing.

- Cease Unauthorized Dispute and Fraud-Coded Activity

- Cease initiating dispute-coded investigations, fraud alerts, or identity-theft processing in Plaintiff's name without Plaintiff's express authorization and cease using Plaintiff's PII for such activity absent lawful authorization.

- Permissible-Purpose and Certification Transparency

- Identify the permissible-purpose certifications and furnishing records relied upon for third-party access to Plaintiff's consumer report, including access by former creditors or third-party collectors lacking current ownership or authority.

## VI. Relief Under N.Y. General Business Law § 349

*(N.Y. GBL § 349(h)*

All relief available under § 349(h), including actual damages, statutory damages, treble damages up to $1,000 where applicable, and costs and disbursements (and, if counsel appears, reasonable attorneys' fees).

## VII. Attorneys' Fees and Costs

*(15 U.S.C. §§ 1681n, 1681o)*

Reasonable attorneys' fees (if counsel appears) and costs as permitted by statute.

## VIII. Such Other and Further Relief as the Court Deems Just and Proper

Including other relief necessary to restore Plaintiff's statutory rights, remedy Experian's misconduct, and prevent further harm.

## RESERVATION OF RIGHTS AND NOTICE OF PRESERVATION OBLIGATIONS; REQUEST FOR PRESERVATION RELIEF IF NECESSARY

1. Plaintiff expressly reserves all rights and remedies available under federal and state law and under the Federal Rules of Civil Procedure, including relief available for any failure

to preserve evidence (including electronically stored information ("ESI")) relevant to the claims and defenses in this action.

2. Defendant Experian Information Solutions, Inc. ("Experian") is on notice that its duty to preserve relevant evidence attaches when litigation is reasonably anticipated and, in any event, no later than the filing of this action. That duty extends to all documents, data, metadata, and ESI reasonably relevant to the allegations and issues presented, including information maintained in automated systems, consumer-portal systems, back-end dispute-processing platforms, third-party vendor platforms, contractors' systems, call-center/CRM platforms, or other repositories within Experian's possession, custody, or control.

3. Experian's routine retention, deletion, overwriting, suppression, recycling, or system-normalization practices do not excuse preservation failures once litigation is reasonably anticipated. Experian shall take reasonable steps to implement and maintain a litigation hold sufficient to prevent the loss, alteration, deletion, suppression, or destruction of relevant materials, including audit trails and system logs reflecting dispute-coded activity, file-level flags, and dissemination events.

4. Many of the most probative records concerning the conduct alleged—such as dispute-intake triggers, routing and re-coding, report-number generation, audit trails, fraud-alert origination data, identity-theft (605B) workflow invocation, reinvestigation workflow steps, reinsertion certification/notice records, and furnishing/permissible-purpose certifications—are maintained exclusively by Experian and may be subject to routine alteration or overwriting absent a litigation hold. Plaintiff respectfully requests that the Court, if necessary and as the Court deems appropriate, enter such preservation relief as

may be required to confirm and enforce Experian's preservation obligations and to ensure the integrity of the record and the fair resolution of this action.

5. Plaintiff does not seek immediate production of the foregoing materials through this notice, but solely seeks preservation to ensure that relevant evidence remains available for discovery and adjudication.

6. By way of example (and without waiving any preservation request), Plaintiff requests that Experian preserve the following categories of documents and ESI (to the extent they exist and are within Experian's possession, custody, or control), from June 2025 to the present (and earlier if relevant to origination, baseline file conditions, or the initiation of any file-level flags, workflows, or dissemination practices):

   • Dispute and Reinvestigation Records

   • All dispute and reinvestigation records relating to Plaintiff, including dispute "intake" records, channel identifiers (mail/portal/phone/internal), timestamps, personnel/system identifiers, report-number records, dispute category codes, routing codes, scope fields, status/closure codes (including "verified," "verified and updated," "remains," "pending," "completed," "results ready," "frivolous," or equivalents), reinvestigation notes, internal comments, decision outputs, exception handling, and any automated or manual verification data.

   • Consumer File Versions and Audit Trails (Including Deletion and Reinsertion Data)

   • All versions/snapshots of Plaintiff's Experian consumer file and related audit trails, including internal file iterations, change histories, system logs reflecting additions, deletions (including deletion of the SoFi tradeline),

reappearance/reinsertion as an LVNV tradeline, dispute-flag status, monthly update logic, and metadata associated with each change (date/time, actor/system, rule invoked, and affected fields).

- §1681i Reinvestigation Materials and "Results Ready" Workflow Records
- All materials relating to reinvestigation activity under 15 U.S.C. §1681i, including internal notes, electronic comments, system actions, escalations, and documentation reflecting what information Experian reviewed or relied upon; and all records explaining how/why Experian generated "completed/results ready" representations while maintaining a "pending" status for the LVNV tradeline, including portal-display logic and back-end status mapping.

- Dispute-Intake and Authorization/Trigger Records (Including Alleged Unauthorized Dispute-Coded Activity)
- All records reflecting dispute creation, dispute-intake triggers, and dispute attribution for any dispute/investigation events attributed to Plaintiff, including origin logs, timestamps, channel identifiers, automated triggers, personnel/system identifiers, and any records reflecting consumer authorization (or the absence of authorization), including events Plaintiff alleges were initiated or re-coded following Plaintiff's July 2025 Method-of-Verification request and events Plaintiff alleges were modified/re-coded in December 2025.

- Method-of-Verification Records
- All documents and ESI relating to Plaintiff's Method-of-Verification request(s), including intake/routing, retrieval efforts, personnel notes, system outputs, the

identity of any furnisher(s) contacted (if any), contact information captured, and any responsive materials created, maintained, or withheld.

- Full-File Disclosure Records and Disclosure-Suppression/Conditionality Records

- All records reflecting Plaintiff's requests for file disclosure under 15 U.S.C. §1681g, what was produced, what was withheld, what was conditioned on additional "verification," and any internal notes or rules governing disclosure completeness, including whether dispute-history/audit-trail information exists and was omitted from consumer-facing disclosures.

- Fraud-Alert / Security-Alert Records (Origination, Authorship, Maintenance, and Dissemination)

- Records relating to fraud-alert and/or "security alert" placement, including origination and maintenance logs; basis/trigger data; date/time/channel of placement; internal notes; audit trails; the text of any fraud-alert statement attributed to Plaintiff; records identifying who authored/approved the language; records reflecting whether contact information (including a telephone number) was requested, stored, suppressed, or omitted; and records reflecting dissemination of any fraud alert or fraud-related indicators (including any forwarding/notification to other consumer reporting agencies).

- Identity-Theft / §605B (15 U.S.C. §1681c-2) Workflow Invocation Records

- All records reflecting any invocation of identity-theft processing or "block" workflows associated with Plaintiff's file, including the decision basis for invoking §605B workflows, any internal classifications used to reframe Plaintiff's

statutory requests, records of demands for FTC/police documentation, and any processing notes or outcomes generated as a result.

- Reinsertion-Certification and Reinsertion-Notice Records
- All records concerning any alleged furnisher certification of accuracy required by 15 U.S.C. §1681i(a)(5)(B) (including the existence, date received, content, furnisher identity, and associated metadata), and all records concerning any reinsertion notice required by 15 U.S.C.

7. §1681i(a)(5)(C) (including generation, mailing/delivery, and content), along with any internal logs reflecting reinsertion determination logic.

- Furnisher Communications and Transmission Data (Including e-OSCAR/ACDV Fields Where Applicable)
- All communications, transmissions, and verification requests sent to or received from furnishers or other third parties concerning Plaintiff, including any dispute transmissions, category coding transmitted, responses received (including "verified," "updated," "remains," "unable to verify," or equivalents), and internal notes or decision logs regarding furnisher reliability, authority, or ownership/servicing status.
- Permissible-Purpose, Certification, and Furnishing/Dissemination Logs
- All records reflecting dissemination of Plaintiff's consumer report, including inquiry logs (soft and hard), subscriber access records, permissible-purpose codes, certifications relied upon under 15 U.S.C. §§1681b(a) and 1681e(a), access requests by entities Plaintiff identifies (including "SOFI BANK NA" and "Credit

Control, LLC"), and records showing why access was permitted, what certification/purpose was recorded, and what internal controls were applied.

- Internal Communications and Case-Management Records
- Internal communications and work records relating to Plaintiff (including emails, call logs, CRM notes, internal tickets, escalations, supervisor reviews, quality-control records, and system notes) referencing disputes, Method-of-Verification requests, reinsertion/certification demands, fraud-alert/security-alert events, identity-theft workflow invocation, disclosure requests, or other file modifications.
- Consumer Disclosures and System-Generated Communications (Including Regulator Submissions)
- All consumer disclosures and communications provided to Plaintiff or generated for Plaintiff, including letters, emails, portal-visible messages, disclosure packets, "results ready" notifications, "Important Information" communications, any versions provided to or through the CFPB portal, and metadata showing creation, generation, and delivery/mailing.

8. Preservation of these materials is necessary to prevent spoliation and to ensure a complete and accurate evidentiary record. Plaintiff reserves the right to seek appropriate relief if relevant evidence is lost, altered, suppressed, overwritten, or not preserved.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38 and the Seventh Amendment to the United States Constitution, Plaintiff demands a trial by jury on all issues so triable.

Plaintiff does not consent to a bench trial on any issue for which a right to trial by jury exists.

**RESERVATION OF RIGHT TO AMEND**

Plaintiff reserves the right to seek leave to amend or supplement this Complaint as permitted by Federal Rule of Civil Procedure 15 and any applicable scheduling order, including to add facts and claims that may become known through discovery or that arise from post-filing conduct by Defendant Experian Information Solutions, Inc.

Dated: February 9, 2026

Queens, New York

Natalie DeJesus
Plaintiff, Pro Se

P.O. BOX 180004
Richmond Hill, NY 11418
Telephone: 718-864-6175
Email: contactnataliedejesus@gmail.com